281 So.2d 136 (1973)
Succession of Chester Butler HYDE.
Florence Hyde FREELAND et al., Plaintiffs-Appellees,
v.
Emma Kalny HYDE, Defendant-Appellant.
No. 4161.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1973.
Rehearing Denied August 15, 1973.
Writ Granted September 26, 1973.
*137 Reggie & Harrington by Oscar W. Boswell, II, Crowley, for defendant-appellant.
Pugh, Buatt, Landry & Pugh by Lawrence G. Pugh, Jr., Crowley, for executrix-appellant.
Knight & Knight by Herschel N. Knight and William N. Knight, Jennings, for plaintiffs-appellees.
*138 Before FRUGÉ, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Chester Butler Hyde died testate on October 29, 1969, leaving as one of his survivors his second wife, Mrs. Emma Kalny Hyde. He also left as surviving legal heirs two children, born of his first marriage, and four grandchildren, issue of a deceased child who also was born of the testator's first marriage. In his will, the testator appointed his widow, Emma Kalny Hyde, as executrix of his estate, and he bequeathed to her "the usufruct until her death of all property both separate and community owned by me at my death."
The surviving widow was duly appointed as testamentary executrix, and shortly thereafter she filed a detailed descriptive list of all property belonging to the estate.
She alleged that all of said property belonged to the community of acquets and gains which formerly existed between her and the testator.
The forced heirs of the decedent, issue of his first marriage, filed a motion to traverse that descriptive list, demanding primarily that the list be amended to show that one-half of the property described therein belonged to the separate estate of the testator, and that the remaining one-half of such property belonged to the community. They demanded, alternatively, that the descriptive list be amended to show a claim of $222,657.47 by the separate estate of the testator against the community estate. And, the children and grandchildren filed a petition for a declaratory judgment, demanding that judgment be rendered decreeing that the bequest made to the surviving widow be reduced to "an undivided one-third interest in and to decedent's estate in usufruct."
After trial, judgment was rendered by the trial court rejecting petitioners' demand that the descriptive list be amended, thus in effect decreeing that the property described in that list belonged to the community. The judgment also recognized that the community estate is indebted to the separate estate of the testator for the sum of $195,192.59; and it decreed that the bequest made by the testator to Mrs. Emma Kalny Hyde be reduced to an undivided one-third interest in and to decedent's estate in usufruct.
The surviving widow, Mrs. Hyde, has appealed. The children and grandchildren, issue of his first marriage, have answered the appeal.
The issues presented are: (1) Does a substantial undivided interest in some items of moveable property described in the Detailed Descriptive List filed by the executrix belong to the testator's separate estate? (2) Is the community indebted to the testator's separate estate for a part of a $27,980.54 payment made to retire a Federal Land Bank mortgage? (3) Is the separate estate of the testator entitled to reimbursement by the community for income taxes paid with separate funds on the gain from the sale by the testator of his separate property? (4) Should the bequest made to Mrs. Hyde be reduced to the usufruct of one-third of the property left by the testator?
Mr. Hyde, the testator, was first married to Cornelia Waller, but they were legally divorced in 1921 or shortly thereafter. Three children were born of that marriage, two of whom are still living and are parties to this action. The third child, who predeceased the testator, is represented in this proceeding by his four surviving children, they being grandchildren of the testator.
The testator married his second wife, Emma Kalny, on October 16, 1941, and he lived with her from that date until the time of his death in 1969. No children were born of that union. We have already noted that his surviving widow is serving as executrix of his estate, and that a substantial bequest was made to her in the testator's will.
*139 On November 24, 1965, Mr. Hyde and his wife, Emma Kalny Hyde, sold to Charles J. Freeland, Jr., a 1,338.58 acre tract of land for a consideration of $450,000.00 in cash. The parties have stipulated that 1,264.58 acres of the property sold "was owned ½ as the separate property of the decedent and ½ by the community of acquets and gains existing between the decedent and Emma Kalny Hyde." They agree that "74 acres of the property sold was owned as the separate property of the decedent." In view of this stipulation the trial judge held, and all parties appear to agree, that 52.76% of the proceeds of the sale of the above mentioned property belonged to the separate estate of the decedent, and the remaining 47.24% belonged to the community.
From the proceeds of that sale, $27,980.54 was used to pay the balance due on a Federal Land Bank mortgage due on a part of the property which was sold. The sum of $27,630.00 was received in cash from the sale, and that amount was paid directly to the Iberia Savings & Loan Association as a part of the purchase price for three certificates of deposit in that association, each for $10,000.00, and all having a total value of $30,000.00, the balance due for said certificates being paid from the new joint checking account which is hereinafter described.
The balance of said proceeds, amounting to $394,389.46, was deposited in a new checking account in the First National Bank of Crowley, Louisiana, opened on November 24, 1965, in the name of Emma K. Hyde and Chester Hyde, with the requirement that both of them sign all checks. No other funds were deposited to that account except for one deposit in the amount of $3,400.08 made on December 24, 1965. The funds deposited on that occasion belonged to the community. This account was subsequently depleted entirely by withdrawals made prior to the testator's death.
Mr. and Mrs. Hyde withdrew from this joint account the aggregate sum of $99,549.20 to pay state and federal taxes on the above mentioned sale. At the trial the parties stipulated that $42,227.51 of these taxes was attributable to the separate property of the decedent, and that $57,318.59 was attributable to the community property. The trial judge determined, in effect, that the testator's separate estate was entitled to be reimbursed 52.76% of the last mentioned sum, but that it was not entitled to be reimbursed any part of the amount paid which was attributable to the sale of the decedent's separate property. It was discovered later, however, that the above mentioned figures were incorrect, and in this court the parties have stipulated that of the total income tax paid, $57,758.45 was attributable to the separate property of the testator, and $41,790.75 was attributable to the community property.
We have already mentioned that $2,370.00 was withdrawn from the joint account to pay the balance due on three certificates of deposit in the Iberia Savings & Loan Association, which certificates have a total value of $30,000.00. One $10,000.00 certificate was issued to Mr. Hyde, one to Mrs. Hyde, and the third was issued to both parties jointly. All of said certificates were still owned by the parties at the time of Mr. Hyde's death, and they are listed in the Descriptive List filed by the executrix.
Several other withdrawals were made from the joint account to purchase certificates of deposit, city and parish improvement bonds, street improvement bonds, stock in Investor's Mutual, Inc., shares of stock in American Telephone & Telegraph Co., stock in General Motors Corporation, and to purchase and improve real property. All of the items so purchased were still owned by Mr. and Mrs. Hyde (either as a part of the former's separate estate or as a part of the community) at the time of Mr. Hyde's death, and all of those items were included in the Detailed Descriptive List which has been filed.
The trial judge held that all of the items which had been purchased with funds withdrawn from the above described joint *140 account, and which were still owned by the purchasers at the time of the testator's death, belonged to the community of acquets and gains which had existed between Mr. and Mrs. Hyde. The forced heirs of the decedent contend that the trial court erred. They argue that since the proportionate ownership of the joint account funds are so clearly traceable, the movable property purchased with those funds, including the above mentioned certificates of deposit, bonds and shares of stock, should be decreed to belong partly to the separate estate of the decedent and partly to the community, in the proportions of 52.76% to the decedent's separate estate and 47.24% to the community estate.
We agree with the trial court that the moveable property purchased with funds withdrawn from the above mentioned joint account belong solely to the community estate.
Under the provisions of the Louisiana Civil Code, and particularly articles 2334, 2402 and 2405, there exists a presumption juris et de jure that property acquired during the existence of the community of acquets and gains in the name of either spouse, whether corporeal or incorporeal, moveable or immovable, is an asset of the community. When it is contended that property so acquired is the separate property of one of the spouses, the burden of overcoming the presumption that such property is an asset of the community rests upon the party alleging its separate character. This burden is satisfied only when it is proved that the property was acquired and paid for with separate funds, and that proof must be strict, clear, positive and legally certain. Fleming v. Fleming, 211 La. 860, 30 So.2d 860 (1947); Succession of Hemenway, 228 La. 572, 83 So.2d 377 (1955); and Succession of Hollier, 158 So.2d 351 (La.App. 3 Cir. 1963).
When separate funds and community funds, even though distinguishable and not commingled, are used in making up the consideration paid for property acquired during the existence of the community, the property so purchased becomes community property, although the community may be indebted to the separate estate for the amount of separate funds used in making the purchase. Succession of Hemenway, supra; Succession of Hollier, supra; Blalock v. Blalock, 259 So.2d 367 (La.App. 2 Cir. 1972).
In the instant suit separate funds and community funds were used in making up the consideration paid for the certificates of deposit, stocks and bonds which are at issue here. Applying the rules set out in the above jurisprudence, therefore, we conclude that all of the items purchased by withdrawals from this joint account belonged to the community of acquets and gains which existed between Mr. and Mrs. Hyde, and that the separate estate of the testator did not acquire an interest in any of said items of moveable property.
The trial judge concluded, however, that although the property purchased with proceeds of the sale became community property, the separate estate of the testator was entitled to be reimbursed the total sum of $195,192.59 from the community estate. That decision was based on a finding that that amount of the testator's separate funds was spent for the benefit of the community. The trial court reasoned that all of the proceeds of the sale of the above mentioned property were spent to benefit the community, except for an expenditure of $42,227.51 for income taxes. At the time of the trial it appeared that that amount had been paid as income taxes attributable to the decedent's separate estate. Basically, the court figured that 52.76% of $450,000.00 amounted to $237,420.00. By subtracting $42,227.51 (the amount the court felt had been paid as taxes on the sale of the decedent's separate property), the judge arrived at the figure of $195,192.49 which was decreed to be due the separate estate.
None of the parties appear to question the conclusion that at least most of the *141 proceeds of the sale were spent to benefit the community, and that the separate estate of the decedent is entitled to be reimbursed 52.76% of the amounts which were so spent. They disagree only as to the trial court's decision to allow reimbursement of a part of the amount paid to the Federal Land Bank and its decision to not allow reimbursement of a part of the amount paid as income taxes. Since no claim has been made that the proceeds of the sale became community funds because of commingling, it is unnecessary for us to consider any such issue.
The executrix contends that the trial judge erred in including 52.76% of the amount paid to the Federal Land Bank in the amounts which were to be reimbursed to the decedent's separate estate. The trial court found that the $27,980.54 indebtedness to the Federal Land Bank was a community debt, and he thus concluded that the community should reimburse the separate estate 52.76% of that amount, or $14,762.53.
The evidence shows that the debt to the Federal Land Bank was secured by mortgages on parts of the property which was sold in 1965. The payment obviously was made to retire the indebtedness to that bank, and to obtain a cancellation of the mortgage securing it, so that a clear title could be delivered to the purchaser. The executrix stated in answer to interrogatories which were propounded to her that "As best as I can remember, on November 24, 1965, we owed the Federal Land Bank of New Orleans about Forty Thousand and No/100 ($40,000.00) . . .My husband had no separate debts at that time."
We think the last quoted statement of the executrix, considered with the other evidence, is sufficient to support the conclusions of the trial court that the indebtedness owed to the Federal Land Bank at the time of the sale was a community debt. The payment of that debt benefited the community, and we thus affirm that part of the trial court's judgment which decrees that the community must reimburse the decedent's separate estate the amount of separate funds which were used to pay that debt.
The forced heirs contend, as an alternative to their principal claim already discussed, that the trial court erred in refusing to condemn the community to reimburse the decedent's separate estate for all of the income taxes paid on the property which was sold. Their argument is that the income taxes which became due on the gain realized from that sale, amounting to $99,549.20, constituted a community debt, despite the fact that a part of the gain was attributable to the sale of the decedent's separate property. They contend, therefore, that the decedent's separate estate is entitled to be reimbursed 52.76% of the amount of that entire payment from the community estate.
In United States v. Mitchell, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971), the Supreme Court held that a married woman domiciled in Louisiana is personally liable for federal income taxes on half of the community income realized during the existence of the community. The court stated that federal income tax liability follows ownership, and that although state law creates legal interests, the federal statute determines when and how they shall be taxed. In view of that holding, we conclude that liability for income taxes in the instant suit follows ownership. We thus agree with the trial court that Mr. Hyde's separate estate was liable for that part of the income taxes which were attributable to the sale of his separate property, and that the separate estate is not entitled to be reimbursed for that part of the income tax payment which was owed by Mr. Hyde separately.
We have already noted that at the time of the trial the evidence incorrectly showed that $42,227.41 of the income taxes paid was attributable to the decedent's separate property, and that the trial court deducted that amount from the sums which otherwise *142 would be due the testator's separate estate. The record now has been corrected to show that $57,758.45 was attributable to the decedent's separate property. By deducting that amount from $237,420.00, the latter being the aggregate amount of all separate funds which were paid, we get a balance of $179,661.55. We conclude that the judgment appealed from must be amended to decree that the decedent's separate estate is entitled to be reimbursed $179,661.55 instead of the sum of $195,192.59.
We turn now to the last question presented, and that is whether the bequest made to Mrs. Hyde should be reduced to the usufruct of one-third of the property left by the testator.
The will contains the following provisions which are pertinent to the issues presented here:
"2. I will, devise and bequeath to my wife Emma Kalny Hyde, the usufruct until her death of all property, both separate and community owned by me at my death. The usufruct herein bequeathed to my wife shall include all mineral lease bonuses, rentals, royalties and mineral revenues, and my wife shall receive such mineral lease bonuses, rentals, royalties and mineral revenues in full ownership and she or her estate shall not account for such revenues upon the termination of her usufruct.
"3. Subject to the usufruct herein bequeathed to my wife Emma Kalny Hyde, I will, devise and bequeath all property both separate and community, owned by me at my death, to my descendants in the proportions provided by law."
Under LSA-C.C. art. 1493, the bequest to Mrs. Hyde cannot exceed one-third of the property left by the testator. The forced heirs contend that the donation to the executrix impinges on their legitime, and that under the provisions of LSA-C.C. art. 1752 they are entitled to have the donation to Mrs. Hyde reduced to an undivided one-third interest in the decedent's estate, in usufruct. They rely primarily on Article 1752 of the Civil Code and on Succession of Braswell, 142 La. 948, 77 So. 886 (1918).
The legatee, Mrs. Hyde, contends that Article 1752 of the Civil Code must be interpreted in combination with Article 1499, with the result that the forced heirs are given an option either to execute the donation or to abandon to her the full ownership of one-third of the estate of the donor.
The trial judge, agreeing with the forced heirs, concluded that the bequest made to Mrs. Hyde should be reduced to an undivided one-third interest in and to decedent's estate, in usufruct. We have concluded that the trial court erred in reaching that conclusion.
Article 1752 of the Civil Code was amended in 1882 and was again amended in 1916. The article, as last amended by Act 116 of 1916, provides:
"A man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife, or she to her husband, either by donation inter vivos or by last will and testament, in full property or in usufruct, all of that portion of his estate, or her estate, as the case may be, that he or she could legally give to a stranger." (Emphasis added).
LSA-C.C. art. 1493 provides, among other things, that donations cannot exceed one-third of the property of the disposer if he leaves three or more legitimate children.
Article 1499 of the Civil Code provides:
"If the disposition made by donation inter vivos or mortis causa, be of a usufruct, or of an annuity, the value of which exceeds the disposable portion, the forced heirs have the option, either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of."
*143 In Succession of Braswell, supra, the decedent bequeathed to his second wife the usufruct of his entire estate, and he gave to his six children, issue of his first marriage, the naked ownership. Our Supreme Court considered the provisions of Articles 1752 and 1499 of the Civil Code, and held that the bequest should be reduced to one-third of the estate, in usufruct. The facts in Braswell thus were almost identical to the facts in the instant suit, and the forced heirs contend that the rule applied in that case should be applied here. In Braswell, however, the court applied Article 1752 of the Civil Code as it was worded prior to 1916, and for that reason we do not consider the decision rendered in that case to be applicable here.
Before Civil Code Article 1752 was amended by Act 116 of 1916, it provided:
"A man or woman who contracts a second or subsequent marriage, having children by a former one, can give to his wife, or she to her husband, either by donation or by last will and testament, in full property or in usufruct, not exceeding one-third of his or her property." (Emphasis added).
It is apparent that prior to 1916, Article 1752 contained a rule, regulating and limiting donations from one spouse to another, which could be applied without reference to any other articles of the Civil Code. After the 1916 amendment, however, Article 1752 has no longer been self-contained. As amended, it provides in effect that a donor can give to his spouse any portion of his estate that he could legally give to a stranger. All parties to the instant suit apparently agree that after the 1916 amendment it became necessary in applying Article 1752 to refer at least to Article 1493 of the Civil Code to determine what portion could be given to a stranger. We believe that the article, as now worded, also requires reference to LSA-C.C. art. 1499 in appropriate cases to determine what donations can be made to strangers.
Under Article 1499, for instance, a donation of the usufruct of all of the donor's property may be made to a stranger. And, such a donation is valid, subject only to the option of the forced heirs either to execute the donation or to abandon to the donee the full ownership of that portion of the estate as the donor had a right to dispose of. Since the 1916 amendment to Article 1752, we think the same kind of donation can be made to the donor's spouse, subject to the same option and with the same effect as though made to a stranger.
In addition to Succession of Braswell, supra, plaintiffs also rely on Succession of McLellan, 144 So.2d 291 (La.App. 4 Cir. 1962); Succession of Ramp, 205 So.2d 86 (La.App. 4 Cir. 1967); and Succession of Young, 205 So.2d 791 (La.App. 1 Cir. 1967). We distinguish each of those cases.
In Succession of McLellan, supra, for instance, the testator bequeathed to his surviving spouse, his third wife, the disposable portion of his entire estate in full ownership, and in addition thereto he gave her the usufruct during her natural life of all of his property, including the legitimes of children of former marriages. The Fourth Circuit Court of Appeal applied the well established rule that forced heirs cannot be deprived of their legitimes in full ownership (except as provided in LSA-C.C. art. 916), and judgment thus was rendered sending the forced heirs in possession of their legitimes "without being encumbered by the usufruct of the defendant." The donation of the disposable portion to the testator's spouse was not disturbed. We find nothing in that decision which is inconsistent with the conclusions we have reached in the instant suit.
The Ramp case, supra, involved primarily the validity of a compromise agreement which had been entered into between the legatee and some of the forced heirs. We do not regard that case as holding that Article 1752 should not be interpreted with Article 1499 in appropriate cases.
*144 In Succession of Young, supra, the result appears to be consistent with the holding in Succession of Braswell, supra, but we find no discussion of LSA-C.C. art. 1499, or of the option provided in that article, and we are unable to determine whether the court considered the issue which is presented in the instant suit. We thus do not consider the Young case as authority for the position taken by the forced heirs here.
We agree with the following appropriate remarks of Professor A. N. Yiannopoulos, in a scholarly article entitled "Testamentary Dispositions in favor of the Surviving Spouse and the Legitime of Descendants," appearing in 28 La.L.Rev. 509, 528, 530:
"In its pre-1916 version, article 1752 contained a rule for the determination of the disposable portion, in perfect ownership or in usufruct, without reference to any other articles in the Code. Today, however, article 1752 declares that the testator may give to his spouse of a second marriage the same portion of his property that he may give to a stranger. Hence, by necessity, the rights of a forced heir of a former marriage must be determined as if the excessive donation in favor of the surviving spouse had been made to a stranger. If the disposition is in perfect ownership, its validity and effect will have to be determined in the light of article 1493; and if the disposition is in usufruct, its validity and effect will have to be determined in the light of the option granted to forced heirs by article 1499."
* * * * * *
"In conclusion, one may observe that the Brasswell case was correctly decided under the pre-1916 version of article 1752, but the decision should no longer be considered as authority for the proposition that a bequest of the usufruct of an entire estate in favor of the surviving spouse of a second marriage must be reduced to the usufruct of the disposable portion."
We also quote with approval the following comment of Professor Carlos E. Lazarus, in his discussion of the Young and Ramp cases, in 29 La.L.Rev. 193, 197 (Footnote 17):
"As last amended by La. Acts 1916, No. 116, article 1752 increased the disposable portion under such circumstances to the portion that can be legally given to a stranger, which portion can be given either `in full property or in usufruct.' This phrase is a remnant of the legislation as first enacted, and is now apparently inconsequential for it merely gives the donor the right of doing what he has the faculty of doing anyhow, that is, of disposing of the disposable portion in any manner he sees fit. It is evident, therefore, that it no longer makes any difference whether the donor has children by a prior marriage, or whether the disposition is made to a spouse or to a stranger. The disposable portion will always be the same in all cases and is limited only by the provisions of articles 1493 and 1494."
Our conclusion is that Article 1752 of the Civil Code must be interpreted in combination with Article 1499. In the instant suit we believe that the bequest which the testator made to Mrs. Hyde of the usufruct of all property left by him at his death is subject to the option provided in LSA-C.C. art. 1499. The trial court erred, therefore, in simply reducing that bequest.
For the reasons herein assigned, we hereby reverse that part of the judgment appealed from which decrees that the bequest made to defendant, Mrs. Emma Kalny Hyde, be reduced to an undivided one-third interest in and to decedent's estate in usufruct. The right is reserved to the forced heirs, however, to exercise the option provided in LSA-C.C. art. 1499. That part of the judgment appealed from which recognizes a debt to the separate estate of the testator, Chester Hyde, by the community which existed between the testator and Mrs. Emma Kalny Hyde is amended to reduce *145 the amount of the reimbursement from $195,192.59 to the sum of $179,661.55. In all other respects, the judgment appealed from is affirmed. The costs of this appeal are to be paid by the succession.
Reversed in part, amended in part and affirmed.