205 So.2d 791 (1967)
Succession of Clyde P. YOUNG.
No. 7195.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
Rehearing Denied January 29, 1968.
*793 Charles B. W. Palmer, of Palmer & Palmer, Amite, for appellant.
Edwin C. Schilling, Jr., of Schilling & Simpson, Amite, for appellee.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This appeal, by Margaret Grace Young Flair, daughter by first marriage and only child of decedent, Clyde P. Young, seeks reversal of the judgment of the trial court rejecting appellant's demand for reduction of the usufruct granted by decedent to his second wife, Jessie G. Young (appellee), from the whole of decedent's estate to the disposable portion thereof. She also prays for amendment of that portion of the trial court decree fixing the amount of collateral required of the window as security for her faithful and prudent administration of the movables subject to her usufruct. We find that the trial court improperly rejected appellant's demand for reduction of the usufruct conveyed and that the amount of security ordered must be increased.
Decedent Clyde P. Young died December 16, 1961, leaving an olographic will in which he bequeathed his entire estate to his said daughter, subject to the lifetime usufruct thereof in favor of decedent's aforesaid widow. On January 18, 1962, decedent's testament was duly probated and his surviving spouse confirmed as testamentary executrix pursuant to the terms thereof. Subsequently, on February 28, 1962, an inventory and appraisement was filed indicating decedent died possessed of no real property but left certain enumerated movable effects valued and appraised at the sum of $2,000.00. Said inventory does not indicate whether the listed movables were the separate property of decedent or belonged to the community which existed between decedent and his surviving spouse. On July 20, 1962, appellant caused a rule to issue ordering appellee to show cause why the inventory should not be set aside or, alternatively, amended to include a savings account in the sum of $11,776.28 in the Guaranty Bank and Trust Co. of Amite, Louisiana, and such other assets as may be found to belong to decedent's estate as disclosed by appellee's answers to interrogatories propounded by appellant. Judgment on the aforesaid rule was rendered June 25, 1963, ordering the inventory amended to include the following assets: (1) The sum of $12,000.00, representing the value of improvements constructed on the separate property of appellee with funds belonging to the community which existed between appellee and decedent, and (2) A savings account in the sum of $11,776.28 in the aforementioned bank. It was further ordered these two items be added to the inventory as community property with an undivided one-half interest therein belonging to the surviving widow and the other undivided one-half to appellant subject to the usufruct thereon in favor of appellee. From said order or judgment, no appeal was taken by appellant.
Later, on April 27, 1964, Mrs. Flair moved the court and was granted an order directing appellee to show cause why appellee should not furnish security in the minimum amount of $12,888.14 to insure receipt of appellant's legacy upon termination of appellee's usufruct. Mrs. Young answered this rule praying that she not be required to furnish security in excess of the sum of $5,888.14, and further that she be authorized to provide same by granting a special mortgage on her undivided one-half interest in certain immovable property situated in Amite, Louisiana, (being the same property which was improved with community funds). Before any action was taken on the aforesaid motion, appellant filed another motion on September 29, 1966, praying that appellee be ordered to show cause why the usufruct bequeathed appellee should not be reduced to the disposable portion of decedent's estate, namely, two-thirds. Appellee answered this latter motion praying that appellant's demands be rejected contending the usufruct bequeathed did *794 not exceed the value of the disposable portion of decedent's estate.
Judgment on both rules was rendered February 27, 1967. The decree ordered Mrs. Young to furnish security in the sum of $6,000.00, and authorized the collateral to be in the form of a special mortgage on the real property owned by her in Amite, Louisiana, said mortgage to include the value of appellee's interest in the improvements constructed thereon with community funds. The trial court also adjudged that the usufruct granted Mrs. Young did not exceed the value of the disposable portion of decedent's succession and dismissed appellant's rule to reduce same.
Before proceeding to a consideration of the merits of the issues thus posed for resolution, we must first settle a procedural question raised by appellee's motion to dismiss this appeal. In essence, appellee contends that since the judgment of June 25, 1963, decreed the usufruct bequeathed Mrs. Young encompassed decedent's entire estate (including his one-half interest in all community property), said judgment is now final consequently this present appeal cannot be considered as an appeal from that portion of the judgment declaring the extent of appellee's usufruct to be the entire half of decedent's share of the community assets.
In rejecting appellee's said motion to dismiss, we note initially that the order in question in effect merely homologated the amended inventory which showed additional assets belonging to decedent's estate in the form of a savings account and a claim against the separate estate of decedent's surviving spouse. Appellant's show cause order, pursuant to which said decree was rendered, did not ask that the extent of the widow's usufruct be determined at that time but merely that such additional assets as might be discovered be listed, appraised and decreed either separate property of decedent or property belonging to the community which existed between appellee and decedent.
The sole question raised by appellant's pleadings at the time of said order was merely the determination of what property was left by decedent. No issue was then raised concerning the extent of the widow's usufruct upon decedent's property. In decreeing the extent of appellee's usufruct at that juncture, the trial court ex proprio motu dealt with this question which was not before it on the merits.
The precise issue of the extent of appellee's usufruct was not raised until September 29, 1966, on which date appellant moved to reduce the usufruct to decedent's disposable portion. The adverse determination of February 27, 1967, rejected appellant's contention. This latter decree adjudicating a contested issue was of course a final judgment. However, from this decision appellant timely appealed. We therefore overrule appellee's motion to dismiss the instant appeal insofar as it seeks to question the propriety of the trial court's judgment decreeing the widow's usufruct to attach to the whole of decedent's estate.
On the merits we find two questions presented for resolution. First, should the usufruct bequeathed the widow in community be reduced to decedent's disposable portion which all parties agree is two-thirds of decedent's estate. Secondly, to what extent must the surviving widow furnish security to assure delivery of the movables subject to her right of usufruct.
Although diametrically opposing views are asserted by appellant and appellee, both rely upon the same codal provision, namely LSA-C.C. Article 1752, as authority for their respective positions.
LSA-C.C. Article 1752 provides as follows:
"A man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife, or she to her husband, either by donation inter vivos or by last will and testament, in full property or in usufruct, all of that portion of *795 his estate, or her estate, as the case may be, that he or she could legally give to a stranger."
In substance appellant argues the cited statute has been interpreted to mean that a person who contracts a second marriage, having children by another union, may bequeath his second spouse only the disposable portion of his estate, either in full ownership or usufruct, and where the legitime of the forced heir is impinged upon under such circumstances the bequest in favor of the second spouse must be reduced. As authority for said position appellant cites Succession of Braswell, 142 La. 948, 77 So. 886, and Succession of McLellan, La.App., 144 So.2d 291.
On the other hand, however, appellee maintains Succession of McLellan, supra, holds that under these circumstances the surviving spouse is entitled to either the usufruct of all decedent's property or the disposable portion in naked ownership, but not both. In extension of this position, appellee contends that, in the instant case, only the usufruct of decedent's estate was bequeathed and since the value of the usufruct does not exceed the value of the disposable portion of decedent's estate, the bequest is not subject to reduction.
Considering the cited authorities, we note that in Succession of McClellan, supra, testator left his surviving spouse both the usufruct of all his property and the disposable portion of his estate. Two of decedent's children by a former marriage sought to reduce the widow's legacy to the extent it infringed upon their legitime. They prayed for recognition as owners of their respective legitimes free of the usufruct left the widow. In settling the controversy the court held the widow entitled to either the usufruct or decedent's disposable portion, but not both. On this basis the court affirmed the judgment of the trial court placing the children in possession of their legitimes free of the widow's usufruct.
Succession of Braswell, supra, involved a factual situation identical to the case at bar. There the testator gave the usufruct of his entire estate to his second wife leaving the naked ownership thereof to his children, issue of a former marriage. Upon authority of LSA-C.C. Article 1752, the children requested the disposition to their stepmother be reduced to decedent's disposable portion of one-third which amount was then specified by Article 1752 as the maximum which could be left to a surviving spouse either in full ownership or usufruct. In conformity with Article 1752, supra, as it then specified, the Supreme Court affirmed the trial court decree reducing the disposition to the stepmother to one-third of decedent's estate in usufruct.
LSA-C.C. Article 1493 provides that the legitime of one child shall consist of one-third of the decedent's estate, thus making decedent's disposable portion two-thirds of his estate when leaving only one forced heir. Also pertinent are the provisions of LSA-C.C. Article 1502 which stipulate a disposition of property in excess of the legitime of forced heirs is not void but merely reducible to the quantum of the legitime. It follows, therefore, the usufruct in favor of appellee, Mrs. Jessie Young, must be reduced to two-thirds of decedent's estate, the other one-third falling to appellant Margaret Flair in full, unencumbered ownership.
Moreover, we find no merit in appellee's contention that the usufruct should be maintained on decedent's entire estate considering the value of the usufruct of the entire succession does not exceed the value of the disposable portion of two-thirds. We observe first the value of the usufruct of the entire succession is not disclosed by the record. Assuming arguendo, such value did appear herein, the provisions of the applicable article are unmistakably clear. In plain unambiguous language, Article 1752, supra, states the testator may leave the surviving spouse, in full ownership or in usufruct all that testator could leave a stranger. It does not, as appellee contends, permit the bequest of usufruct to the value of the disposable portion *796 but rather authorizes the giving of the disposable portion in usufruct.
We next consider the question of the amount of security which must be furnished by the widow to assure return of the two-thirds of decedent's estate owned in naked ownership by testator's daughter, Margaret M. Flair.
Provision for such security is contained in LSA-C.C. Article 559, the pertinent portion of which reads as follows:
"The amount of this security shall be the estimated value of the movables subject to the usufruct, according to the inventory * * *."
By stipulation of record the parties agree that the movable property, (consisting mainly of household furniture and an automobile) initially inventoried and appraised at the sum of $2,000.00, belongs to the community of acquets and gains which existed between decedent and appellee. Decedent's entire estate therefore amounted to the sum of one-half of $25,776.28 or $12,888.14.
In ordering security posted in the sum of $6,000.00, the trial court apparently considered the sole item involved to be the bank account in the sum of $11,776.28. Appellee maintains this item properly represents the basis for fixing the security required therefore the bond ordered by the trial court in the amount of $6,000.00 is adequate and should not be increased. In so contending, however, both appellee (and apparently the trial court also) overlooked the initially inventoried movables aggregating $2,000.00 and the value of the claim held by the community against appellee's separate estate in the sum of $12,000.00, admittedly resulting from enhancement of appellee's separate immovable property by the expenditure of community funds thereon.
The claim of the community under such circumstances is not an immovable but rather a movable. It is well settled that improvements made on the separate immovable property of a husband or wife with community funds belong to the owner of the soil. The community does not become the owner of such improvements but merely enjoys a claim against the separate estate of the spouse whose separate property is thus improved. Succession of Singer, 208 La. 463, 23 So.2d 184, and cases therein cited. The liability of the spouse in such circumstances is repayment to the community at its dissolution the enhanced value of the separate estate so improved. Succession of Singer, supra.
It appears that according to our law things are classified as either movables or immovables. LSA-C.C. Article 461. In general immovables are things which are immovable by nature and cannot either move themselves or be moved from one place to another. There are, however, things considered immovable by disposition of the law, LSA-C.C. Article 462, as well as by destination and by the objects to which they are applied. LSA-C.C. Article 463. For purposes of the present discussion, it may be stated that movables are such either by their nature or by legal disposition. LSA-C.C. Article 472. Movables by nature are described in LSA-C.C. Article 473 as things which may be carried from one place to another whether they move by themselves, such as cattle, or whether they are inanimate objects capable of being moved by extraneous power.
More particularly, however, we note LSA-C.C. Article 474, which classes as movables all obligations and actions the object of which is the recovery of money due. Obviously, the claim of the community against the estate of appellee herein falls into the category of movables described in Article 474, supra.
Since the improvements in question belong to appellee subject to her obligation to repay the community the enhanced value thereof, neither decedent nor appellant Mrs. Margaret M. Flair owns any proprietary interest therein. The value of the admitted *797 claim of $12,000.00 is therefore a community movable asset and decedent's one-half thereof, which is subject to appellee's usufruct, must be secured as any other movable as provided in LSA-C.C. Article 559.
We find therefore decedent's estate consists entirely of his undivided half of the assets belonging to the community of acquets and gains existing between decedent and appellee as shown on the amended inventory of record. We also find said assets to be movables in toto and decedent's undivided half thereof valued in the sum of $12,888.14. Of said amount, the sum of $4,296.04 represents the legitime of appellant Margaret M. Flair to which she is entitled in full ownership free of the usufruct granted appellee Jessie G. Young. The remaining two-thirds of decedent's succession amounting to the sum of $8,592.10 constitutes the disposable portion of the estate and is inherited by appellant in naked ownership subject to the usufruct thereon in favor of appellee.
It is therefore ordered, adjudged and decreed that the judgment of the trial court is reversed insofar as it rejected the demand of appellant Margaret Flair to reduce the usufruct granted by decedent Clyde P. Young in favor of his surviving widow, Jessie G. Young, and judgment rendered herein in favor of appellant reducing said usufruct to decedent's disposable portion of two-thirds of decedent's estate, the remaining one-third accruing to appellant Margaret Flair free of said usufruct.
It is further ordered, adjudged and decreed that the judgment of the trial court fixing the security to be furnished by Mrs. Jessie G. Young in the sum of $6,000.00 be and the same is hereby amended by increasing the amount thereof to the sum of $8,592.10 which may be furnished in the form of a special mortgage on the separate and paraphernal property of Mrs. Jessie G. Young situated in Amite, Louisiana.
All costs of this appeal to be paid by appellee Jessie G. Young; costs in the trial court to be paid equally by appellant and appellee.
It is further ordered, adjudged and decreed that this matter be and the same is hereby remanded to the trial court for further proceedings consistent with the views herein expressed. Costs of this appeal to be paid by appellee Jessie G. Young; costs in the trial court to be born equally by appellant Margaret Flair and appellee Jessie G. Young.
Amended and remanded.