292 So.2d 693 (1974)
Succession of Chester Butler HYDE.
Florence Hyde FREELAND et al., Plaintiffs-Appellees-Applicants,
v.
Emma Kalny HYDE, Defendant-Appellant-Respondent.
No. 53917.
Supreme Court of Louisiana.
March 25, 1974.
Rehearing Denied April 26, 1974.
Herschel N. Knight, William N. Knight, Knight & Knight, Jennings, for plaintiffs-applicants.
*694 Edmund M. Reggie, Reggie & Harrington, Oscar W. Boswell, II, Crowley, for defendant-respondent.
CALOGERO, Justice.
Chester Butler Hyde died testate on October 29, 1962 survived by his second wife, Mrs. Emma Kalny Hyde, two children of his first marriage, and four grandchildren, issue of a deceased child of the first marriage. By an olographic testament dated August 17, 1960 he named Mrs. Hyde executrix of his estate and bequeathed to her "the usufruct until her death of all property both separate and community owned by me at my death." It is this bequest to Mrs. Hyde which presents the remaining issue in this litigation.[1]
The forced heirs filed a petition for a declaratory judgment alleging that the bequest to Mrs. Hyde impinged on their legitime and demanding that it be reduced to "an undivided one-third interest in and to decedent's estate in usufruct." This demand was based on article 1752 of the Civil Code and Succession of Braswell, 142 La. 948, 77 So. 886 (1918). The article reads:
"Art. 1752. A man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife, or she to her husband, either by donation inter vivos or by last will and testament, in full property or in usufruct, all of that portion of his estate, or her estate, as the case may be, that he or she could legally give to a stranger." (As amended by Acts 1916, No. 116)
In this case, the disposable portion was 1/3. Article 1493. Accordingly the forced heirs contend that the testator here may give only 1/3 "in full property or in usufruct."
Mrs. Hyde, on the other hand, argues that article 1752 must be interpreted in combination with article 1499 and that the forced heirs have only the option provided by the latter article:
"Art. 1499. If the disposition made by donation inter vivos or mortis causa be of a usufruct, or of an annuity, the value of which exceeds the disposable portion, the forced heirs have the option either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of."
In Braswell, the testator left to his second wife the usufruct of his entire estate, and to the six children of his first marriage the naked ownership of the estate. The children there argued that the disposition should be reduced to a usufruct of 1/3 of the estate under the terms of article 1752, as amended by Act 13 of 1882. That 1882 version of the article being construed by the Braswell court read:
"A man or woman, who contracts a second or subsequent marriage, having children by a former one, can give to his wife, or she to her husband, either by donation or by last will and testament, in full property, or in usufruct, not exceeding one-third of his or her property."
The widow there, as in this case, argued that Art. 1499 and its option was applicable.
This Court in Braswell held that article 1499 was not applicable to cases controlled by article 1752 and ordered the bequest reduced to a usufruct of 1/3 of the estate.
In the case at hand the District Court agreed with the arguments advanced by the forced heirs and, relying on Succession of Braswell, ordered the bequest reduced to a usufruct of 1/3 of the estate.
The Court of Appeal for the Third Circuit reversed that judgment and held that the forced heirs had only the 1499 option (i. e., to tolerate the entirety usufruct or *695 abandon to Mrs. Hyde the disposable portion in full ownership). Braswell was said to be inapplicable because it was decided under the 1882 version of article 1752 and the article had been amended in 1916, removing the language which had caused Braswell to hold article 1499 inapplicable. (Although Braswell was decided in 1918, the 1916 change in article 1752 was not mentioned in that case, as the operative facts there arose prior to the 1916 amendment). The Court distinguished the appellate court cases cited by the forced heirs as having followed the Braswell result even though rendered under the post-1916 version of article 1752. Those cases were Succession of Young, 205 So.2d 791 (La.App. 1st Cir. 1967), Succession of Ramp, 205 So.2d 86 (La.App. 4th Cir. 1967), and Succession of McLellan, 144 So.2d 291 (La. App. 4th Cir. 1962).
We granted writs (282 So.2d 718) because the Court of Appeal decision in this case is seemingly contrary to Young, Ramp and McLellan, and to consider the effect of the 1916 amendment upon the rule enunciated in Braswell relative to the inapplicability of article 1499 to cases under article 1752, as amended in 1916.
Until 1882, the disposable portion between married persons coming within the purview of article 1752 and its predecessor articles was the least child's portion in usufruct not to exceed 1/5 of the donor's estate, Act 13 of 1882 increased the disposable portion under article 1752 to 1/3 of the donor's estate, in full property or in usufruct. Article 1752 was again amended in 1916 to increase the disposable portion to all that could legally be given a stranger.
As noted earlier Braswell was decided under the 1882 amendment, even though it followed the 1916 change by two years because the operative facts there arose prior to 1916. We explained in Braswell that the 1882 version of article 1752 was self-contained:
"[A]rticle 1752, which fixes the disposable quota as between spouses, does within itself, by its own text, furnish a rule, or the means, for determining whether the disposable portion has been exceeded in the case of a bequest of usufruct . . . .
"The learned counsel for the widow would interpret this article 1752 as reading that a usufruct may be given equal in value to one-third of the estate in full ownership. But the proper reading evidently is that one-third may be given, and that this third may be given either in full ownership or in usufruct. It can be given in no other form." 142 La. at 950-951, 77 So. at 887-888.
The forced heirs argue here that the 1916 amendment to article 1752 left unchanged the language in that article which made it self-contained"in full property or in usufruct." We disagree. The pertinent language relied upon in Braswell was not simply "in full property or in usufruct" but was rather "in full property or in usufruct, not exceeding one-third of his or her property." That language was replaced by "in full property or in usufruct, all of that portion of his estate or her estate, as the case may be, that he or she could legally give to a stranger."
The language, "in full property or in usufruct", relied upon by the forced heirs "is a remnant of the legislation as first enacted, and is now apparently inconsequential for it merely gives the donor the right of doing what he has the faculty of doing anyhow, that is, of disposing of the disposable portion in any manner he sees fit." Lazarus, The Work of the Louisiana Appellate Courts for the 1967-1968 Term: Successions and Donations, 29 La.L.Rev. 193, 197, n. 17 (1969).
The comments of Professor A. N. Yiannopoulos are appropriate:
"In its pre-1916 version, article 1752 contained a rule for the determination of the disposable portion, in perfect ownership or in usufruct, without reference to any other articles in the Code. Today, *696 however, article 1752 declares that the testator may give to his spouse of a second marriage the same portion of his property that he may give to a stranger. Hence, by necessity, the rights of a forced heir of a former marriage must be determined as if the excessive donation in favor of the surviving spouse had been made to a stranger. If the disposition is in perfect ownership, its validity and effect will have to be determined in the light of article 1493; and if the disposition is in usufruct, its validity and effect will have to be determined in the light of the option granted to forced heirs by article 1499."
"...
"In conclusion, one may observe that the Braswell case was correctly decided under the pre-1916 version of article 1752, but the decision should no longer be considered as authority for the proposition that a bequest of the usufruct of an entire estate in favor of the surviving spouse of a second marriage must be reduced to the usufruct of the disposable portion."
Yiannopoulos, Testamentary Dispositions in Favor of the Surviving Spouse and the Legitime of Descendants, 28 La.L.Rev. 509, 528, 530 (1968).
The 1916 amendment removed the last limitation on the right of donation between spouses where the donor has children of a prior marriage. Now, under article 1752, a married person may give his or her spouse all that he or she could give a stranger. To determine what could be given a stranger, reference must be made to the rules regulating forced heirship. In this regard, Braswell is no longer valid and the appellate cases which follow Braswell in holding inapplicable the articles regulating forced heirship, particularly article 1499, are in error.
Forced heirship is a peculiarly civilian institution unique to Louisiana among the fifty states and has been a part of our law since the early colonial days. Comment, Forced Heirs, The Legitime and Loss of the Legitime in Louisiana, 37 Tul.L.Rev. 710, 710 (1963). Its origin is obscured by the mists enveloping the early Roman law. Forced Heirs, supra at 711. Today forced heirship is enshrined in the Louisiana Constitution, Art. IV, § 16 as well as in the proposed constitution of 1974, Art. 12, § 5.
For all its mystic and constitutional fervor, forced heirship is nothing more than the right of descendants or ascendants to a fixed portion of a person's estate. Articles 1493, 1494, 1495. But forced heirship is a right to a fixed portion of the estate in property[2] (articles 1493, 1494), on which "no charges or conditions can be imposed by the testator."[3] Article 1710. As has been correctly noted, the import of these articles is that the legitime must be in full ownership. Lazarus, supra at 194.
Such has been the rule in Louisiana since at least 1858 when in Clarkson v. Clarkson, 13 La.Ann. 422 (1858) this Court held, in accordance with the prevailing French view, that "the law intended to cast upon the forced heir a certain part of the succession in full property, and that, to allow a testator to bequeath to a stranger an usufruct for life of his whole estate (when he has forced heirs), would be to impair the legitime reserved to such heirs of right." 13 La.Ann. at 424. Succession of Braswell, supra; Succession of Ramp, supra; Succession of Young, supra; and Succession of Williams, supra, recognize *697 the right of the forced heir to receive his legitime in unencumbered ownership.
A special rule has been placed in the Code to allow the forced heir his legitime when it has been burdened by a usufruct. Under article 1499, the forced heir has the option "either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of." This article has been in the Codes of Louisiana since 1808 and does no violence to the institution of forced heirship as it preserves to the forced heir his legitime free of the offending usufruct. However, it is preserved for him at no small cost, i. e., the abandonment of the disposable portion in full ownership.[4] It is clear beyond any doubt that the redactors of the Code intended to allow a usufruct to burden a legitime,[5] but at the same time they gave effect to the right of the forced heir to receive his legitime free of the usufruct. Of all the charges and conditions a testator could devise to place on the legitime, only the usufruct is sanctioned. And then it is sanctioned at the option of the forced heir for he can always take his legitime free of the usufruct by abandoning to the donee the disposable portion in full ownership. Such is the price which must be paid for frustration of the testator's will in this regard.[6]
The Court of Appeal correctly rejected the demand of the forced heirs for reduction of the bequest to a usufruct of 1/3 of the estate and held that the forced heirs had only the option provided by article 1499.
For the above assigned reasons the judgment of the Court of Appeal is affirmed.
Affirmed.
NOTES
[1] Other issues were alleged and were fully litigated in the courts below. They are no longer in issue and are reported in the opinion of the Court of Appeal at 281 So.2d 136 (La.App. 3rd Cir. 1973).
[2] See Braswell, supra at 950, 77 So. at 887, where this Court said of article 1493: "This article, in fixing the disposable quota, speaks of full ownership only . . ." See also Succession of Williams, 184 So.2d 70, 73 (La. App. 4th Cir. 1966).
[3] The legal usufruct of article 916 is a statutory exception to the mandate of article 1710 that the legitime be free of charges or condition. See Lazarus, The Work of the Louisiana Appellate Courts for the 1967-1968 Term: Succession and Donations. 29 La.L.Rev. 193, 194, n. 3 and authorities cited therein (1969).
[4] A question which arises is whether or not the forced heir may exercise the option of article 1499 only if the value of the usufruct exceeds the value of the disposable portion (as a literal reading of the article would seem to require, see 3 Yiannopoulos, supra at § 16, pp. 55-6), or if the option is his whenever the usufruct burdens his legitime. The Louisiana cases discussing this question have held that there is no need to first value the usufruct. Clarkson v. Clarkson, supra: Succession of Braswell, supra. In fact in Braswell, article 1499 was explained as being in the Code to avoid the need to value usufructs which burden legitimes. This was the prevailing French view as noted in our 1858 Clarkson decision and is the prevailing French view as recognized more recently by Professor Yiannopoulos, 3 Yiannopoulos, supra at § 16, n. 248. See e. g., Aubry & Rau, Droit Civil Francais: Testamentary Successions & Gratuitous Dispositions § 684a, text at and note 15.
[5] How else can one explain "either to execute the disposition" of article 1499?
[6] See 3 Yiannopoulos, supra at § 16, where at page 73 Professor Yiannopoulos explains that application of article 1499 "would in most cases produce results compatible with the intention of a testator who wishes to bequeath to the surviving spouse of his last marriage the maximum that the law allows. The bequest of the usufruct of his entire estate may well be taken to establish that intention."