BARRY, Judge.
In this succession proceeding a testamentary usufruct in favor of a surviving spouse infringes on the legitime. The trial judge properly ruled that under Civil Code Art. 1499 a forced heir must choose to suffer the impingement or abandon the disposable portion.
The decedent’s son, Stephen Chauvin, filed a petition for his legitime, alleging the impingement by a testamentary usufruct in favor of his stepfather over his mother’s separate property home. He elected under art. 1499 to receive his forced portion in full ownership, abandoning his share of the disposable portion. Chauvin amended his petition, asserting a provision in the will requiring immediate repayment of a mortgage note on the separate-property home from the residuary estate constituted an *976 illegal “charge or condition” on his legi-time.
The amended petition also claims entitlement to his legitime now in full ownership without having to abandon his share of the disposable portion. He asserts there are sufficient assets remaining in the succession to satisfy his legitime without disturbing the usufruct over the home, but the provision requiring liquidation of the mortgage will exhaust the remaining assets, depriving him of his legitime. Thus, Chau-vin argues, the provision requiring payment of the mortgage is an illegal “charge or condition” in violation of C.C. Art. 1710 and should be stricken. He also contends the trial court undervalued the legitime through miscalculation of the succession assets.
The case was decided on a motion for summary judgment and the pertinent facts are not in dispute. Mrs. Buckley, Chau-vin’s mother, died testate in New Orleans on February 21, 1981. She is survived by two children: petitioner Chauvin and a daughter, Frankie Chauvin Ramonden [1], who are issue of her first marriage. The decedent is also survived by her second husband, Stewart Buckley, whom she designated as executor of her estate. The succession includes both separate and community property.
According to the amended sworn descriptive list the decedent’s net V2 interest in the community totals $5,058.71. The bulk of decedent’s estate is separate property and includes her home on State Street in New Orleans, V2 interest in Bayou Lacombe real estate, equity in the Jarrett estate in Texas, and movables.
The original descriptive list itemizes the separate property:

ASSETS

$102,100.00 2636 State St.
22,500.00 Bayou Lacombe property
13,150.00 Jarrett Estate
4,225.00 movables
$141,975.00 total separate assets

DEBTS

$ 39,751.66 mortgage on 2636 State St.
The amended descriptive list increased the value of the separate movables to $9,532.25. The amended list also increased the value in the Jarrett estate and the Bayou Lacombe property by $2,132.08. These increases were not reflected in the trial court’s calculations of the legitime and disposable portion, and appellant assigns this alleged oversight as error.
By brief, however, Chauvin asserts his legitime was undervalued because “[n]either the increase in the Bayou Lacombe property value or the Jarrett estate is attributable to increase in value after death. They are both merely amendments of the date of death value.”
Chauvin does not explain why the increases did not occur following decedent’s death. The executor argues the small increase in the Jarrett estate represents interest from investments, etc., which accrued after the testatrix’s death and should not be included in calculating the legitime.[2] Similarly, he suggests the increase in the Bayou Lacombe property may also represent post-death appreciation. Since the record does not resolve this question and the trial court expressly deferred a final accounting and homologation until after resolution of the legal issues, we remand this issue.
For the purpose of dealing with Chau-vin’s primary complaints we will use the higher valuations. The date-of-death value of the succession assets, less debts (including the home mortgage) is $116,852.16. With two forced heirs the legitime of each child is ¼ or $29,213.04.
Mrs. Buckley bequeathed to Mr. Buckley her half of their community property. She also gave her husband the usufruct for life of her State Street home with all its furnishings, excluding a few items which were subjects of particular legacies. The will then provided “subject to the foregoing special bequests and usufruct, I leave the *977 balance of my estate to my two children, Frankie and Stephen, share and share alike.”
The will further provides:
“I am the co-owner with my sister of a house and land on Bayou Lacombe in St. Tammany Parish. In the event of my death, I instruct the executor of my estate to sell my interest in that property and to apply the proceeds from such sale to the mortgage presently existing on my home at 2636 State Street. I am also a legatee of the Jarrett estate presently pending in Houston, Texas and I instruct my executor to apply any inheritance received after my death from this estate to any balance remaining on the mortgage of my home at 2636 State Street, it being my desire to have that mortgage liquidated in full before my heirs and usufructuary are put into possession of my estate.”
Chauvin claims the usufruct and provision requiring liquidation of the mortgage are “prohibited conditions on the rights of the legitimate heirs.” We agree with the trial court’s finding that the usu-fruct over the State Street home constitutes an impingement on the legitime. Under LSA-C.C. Art. 1710,
“[N]o charges or conditions can be imposed by the testator on the legitimate portion of the forced heirs.”
Art. 1499 provides:
If the disposition made by donation inter vivos or mortis causa, be of a usufruct, or of an annuity, the value of which exceeds the disposable portion, the forced heirs have the option, either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of.
Our courts have consistently held that, except when specifically authorized by statute,[3] a testamentary usufruct which deprives a forced heir of his right to receive his legitime “free and clear” is illegal.[4] Succession of Hyde, 292 So.2d 693 (La.1974); Succession of Ramp, 205 So.2d 86 (La.App. 4th Cir.1968). As the court declared in Succession of Hyde, at 696:
For all its mystic and constitutional fervor, forced heirship is nothing more than the right of descendants or ascendants to a fixed portion of a person’s estate. Articles 1493, 1494, 1495. But forced heir-ship is a right to a fixed portion of the estate in property (articles 1493, 1494), on which “no charges or conditions can be imposed by the testator.” Article 1710. As has been correctly noted, the import of these articles is that the legi-time must be in full ownership. Lazarus, supra at 194.
The proceeds of the Bayou Lacombe and Jarrett properties are insufficient to pay off the mortgage. The only remaining asset, other than the property subject to *978 the usufruct, is the decedent’s $5,620.53 net interest in the community property, which is insufficient to satisfy two legi-times of $29,213.04 each. Thus, the testamentary usufruct unlawfully burdens the forced portions.
This exact situation was foreseen by the drafters of our Civil Code by providing the Art. 1499 remedy. The Supreme Court said in Succession of Hyde at 697:
A special rule has been placed in the Code to allow the forced heir his legitime when it has been burdened by a usufruct. Under article 1499, the forced heir has the option “either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of.” This article has been in the Codes of Louisiana since 1808 and does no violence to the institution of forced heirship as it preserves to the forced heir his legitime free of the offending usufruct. However, it is preserved for him at no small cost, i.e., the abandonment of the disposable portion in full ownership. It is clear beyond any doubt that the redactors of the Code intended to allow a usufruct to burden a legitime, but at the same time they gave effect to the right of the forced heir to receive his legitime free of the usufruct. Of all the charges and conditions a testator could devise to place on the legitime, only the usufruct is sanctioned. And then it is sanctioned at the option of the forced heir for he can always take his legitime free of the usu-fruct by abandoning to the donee the disposable portion in full ownership. Such is the price which must be paid for frustration of the testator’s will in this regard.
Chauvin’s initial petition acknowledged the art. 1499 option and expressed his willingness to forego his rights to the residuary estate in exchange for immediate possession of his forced portion unencumbered by the usufruct. However, by his amended petition and in this appeal, he would prefer to suffer the usufruct and have the clause requiring payment of the mortgage stricken. He argues the art. 1499 option applies only to usufructs and annuities which burden the legitime and under Art. 1710 any other “charge or condition” should not be given effect.
Appellant claims if the proceeds of the Bayou Lacombe and Jarrett estates are applied to the mortgage there will be insufficient means available to pay his legitime in full ownership; thus, the mortgage payment clause is a prohibited charge on his legitime. We disagree. If the liquidation provision is enforced, the primary debt (mortgage) of the succession will be greatly reduced and the forced heirs’ equity in the home will be increased. Application of the Jarrett and Bayou Lacombe proceeds to the mortgage will not affect the value of the succession or the amount received by the forced heirs. It will affect the time when the forced heirs receive their shares. Chauvin contends there is only an incidental relationship between the liquidation clause and the usufruct; however, the basis for his claim is that the succession property will be tied up by the usufruct.
Chauvin cites numerous codal articles and cases regarding the discharge of succession debts. Article 1415, the first arti-' cle in Title I, Chapter 13 “Of the Payment of the Debts of a Succession,” provides:
The provisions contained in this chapter relating to the manner in which heirs, or other universal successors, are bound to contribute to the payment of debts, does not prevent the contribution from being otherwise regulated by the agreement of the parties, or the will of the testator, provided that by the dispositions made by the testator in this respect, the rights of the forced heirs are not prejudiced.
With regard to the payment of a mortgage on a succession asset, Art. 1638 provides:
If prior to the testament or subsequently, the thing has been mortgaged by the testator for his own debt ... he [the executor] who is to pay the legacy is not bound to discharge the thing bequeathed of the encumbrance unless he be re *979 quired to do it by an express disposition of the testator.
The testatrix clearly directed that proceeds from the Bayou Lacombe and Jarrett properties be applied to the mortgage on State Street. She specifically expressed her “desire to have that mortgage liquidated in full before my heirs and usufructuary are put into possession of my estate.”
The decisions interpreting art. 1638 all confirm the propriety of this instruction. In Succession of Waterman, 298 So.2d 731 (La.1974), the Supreme Court held that a testamentary provision requiring “that all my just debts ... be paid out of my residuary estate” was broad enough to require payment from the residuary estate of an encumbrance by mortgage on separate property. See also Succession of Sinnott, 3 La.Ann. 175 (La.1848), and Succession of Rabasse, 47 La.Ann. 1126, 17 So. 597 (La.1895). This separate debt of the decedent was therefore subject to her testamentary decision as to its reduction or discharge, and the suggestion in Chauvin’s brief that “the choice belongs to the person bound to discharge the mortgage” is not correct in view of the specific instructions by the decedent. Appellant’s reliance on Succession of Sinnott, supra, is misplaced, in that it held, “... even were the devise of the usufruct to be considered a special legacy, the heir would not be bound, in the absence of any express provision in the will to that effect, to discharge the mortgage.” (emphasis ours).
Succession of Waterman, supra, in holding a provision that “all just debts and all taxes be paid from the residuary estate” required payment from the residuary estate of a debt secured by mortgage on property bequeathed to a special legatee, specifically noted:
As a general rule, succession debts must be paid from residuary assets, (citations omitted). The Louisiana Civil Code, however, lays down a special rule as to mortgages bearing upon property included in a bequest.
[citing Art. 1638]
In interpreting a will, the court is primarily concerned with ascertaining the intention of the testator, without departing from the proper signification of terms of the testament, (citations omitted). The basic question is what did the testator mean by what he said, (citations omitted).
Here, the testatrix said: “I direct that all my just debts ... be paid out of my residuary estate.”
The language of the will is broad and unqualified. It is sufficiently broad, in our opinion, to include secured debts. Unsecured debts are taken from the residuary estate by operation of the law. Hence, unless the provision includes secured debts, it adds nothing to the will. Under familiar principles, courts seek to give meaning to all of the testamentary language and to avoid interpretations that render the language meaningless or reduce it to surplusage, (citations omitted).
A construction that the testamentary direction includes payment of the mortgage debt from the residuary estate is fortified by another provision in the will. In the third paragraph, the testatrix directs that all taxes be paid from the residuary estate. See LSA-R.S. 9:2432. The provision lays bare the intention of the testatrix to minimize the financial burden of the special legatees.
We find no prohibition in the testatrix’s stipulation. Under C.C. art. 1499 Mr. Chauvin can choose to suffer the usu-fruct or assert his claim for Vs interest in the succession and abandon his interest in the disposable portion.[5]
*980 The judgment is affirmed and the case remanded.
AFFIRMED AND REMANDED.

. The daughter has not petitioned for her legi-time or challenged the testament.

. See LSA-C.C. Art. 1505.

. At the time of the testatrix’s death, LSA-C.C. Art. 916.1 provided that a legal or testamentary usufruct in favor of the surviving spouse over the decedent’s share of a community property family home would not be considered an impingement on the legitime. However, this exception did not apply to a usufruct over a separate property home in favor of a surviving spouse who is not the parent of the forced heirs. Art. 916.1 was amended by Act 919 of 1981, which extended the exception to a separate-property home inhabited by the spouses prior to death occurring after December 31, 1981; however, since Mrs. Buckley died in February of 1981, the usufruct in question would be illegal if it burdens appellant’s legitime.

. The executor (also the usufructuary) argues the usufruct is not an impingement on the legi-time because the commuted value of the usu-fruct, under the Louisiana inheritance tax tables, is less than the disposable portion of the estate. Since the executor has not answered Mr. Chauvin's appeal, that issue is not properly before this Court. However, we note the same issue was decided in favor of the forced heirs in Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3rd Cir.1976), writ refused 342 So.2d 217 (1977). Relying on Succession of Hyde, supra, Fontenot held that, while “a literal reading of C.C. 1499 would seem to support said position”, under Hyde, "a forced heir need not prove that the value of the usufruct impinged upon his legi-time in order to make the election provided for in C.C. 1499.” The Fontenot opinion reiterated that “Under the doctrine of the Succession of Hyde, supra, these heirs have an absolute right to make such a choice without any showing whatsoever of the value of the usufruct.”

. We note that appellant’s sister (the other forced heir) has not joined in this action. While we disagree with appellee’s assertion that an election under Art. 1499 may be made only by all the forced heirs jointly, see Fontenot v. Fontenot, supra, this Court is aware that his sister’s decision not to make such an election will substantially reduce the attractiveness of the option to appellant. If appellant alone chooses to receive his legitime now, Mr. Buckley will continue to enjoy the usufruct over Mrs. Ramaden’s ½ interest in the home, and will also receive a ¼ *980 interest in the home in full ownership (the share of the disposable portion abandoned by appellant). Thus, appellant will be co-owner, with his stepfather and sister, of a house still partially burdened with a usufruct. While appellant, as a co-owner, would have the right to demand a partition, the dubious marketability of a home burdened with a partial life usufruct would drastically diminish the viability of the Art. 1499 option for appellant.