LEMMON, Justice.
This is a will contest between the testator’s widow and his sole descendent, a daughter from a previous marriage. The principal issue is whether the forced heir, by attacking the testator’s will on several grounds (including the invalidity of a usu-fruct to the surviving spouse valued in excess of the disposable portion) and by obtaining a judgment nullifying the usu-fruct, thereby elected under La.C.C. art. 1499 to abandon to the donee the ownership of the disposable portion.[1] Facts
In a 1978 will the testator established testamentary trusts for both his surviving spouse and his daughter. Although the will drafted by the layman testator was not free from ambiguity, the apparent intent of the testator was to make the widow the usufructuary of the entire estate and the daughter the naked owner, with both interests in trust.[2]
*1074 When the testator died on February 22, 1982, his estate was valued at approximately $235,000, more than two-thirds of which was separate property consisting primarily of undeveloped land. After the will was probated and the executor was confirmed, the daughter filed a petition seeking to declare the will invalid on several grounds and alternatively to annul the widow’s usu-fruct over the testator’s separate property. As to the usufruct issue, the daughter asserted that the grant of a usufruct over the separate property violated La.C.C. art. 890, as amended by Acts Í981, No. 919, by imposing an unauthorized usufruct on separate property inherited by a child of another marriage of the testator. She therefore demanded that she be awarded the separate property free of the usufruct.
The usufruct issue was complicated by the fact that the Legislature in 1981 had enacted two different versions of Article 890. Act 911 authorized the testator to grant a legal usufruct to the surviving spouse over all or part of his separate property, while Act 919, enacted the same day, authorized the testator to grant a legal usufruct to the surviving spouse only over that portion of his separate property that is inherited by issue of the marriage with the survivor or by illegitimate children.[3]
*1075 On January 12, 1984, the trial court rendered judgment decreeing, among other things, that the usufruct granted to the widow over the testator’s separate property did not violate Article 890. Obviously applying the Act 911 version, the judge reasoned that Article 890 allowed a testator to establish a legal usufruct over both community and separate property inherited by children of a prior marriage.[4]
The daughter applied for a new trial, contending among other things that the ‘trial judge had applied the wrong 1981 act in determining the validity of the usufruct. She argued that Act 919 was the appropriate legislation to be applied in this case and that Article 890, as enacted by Act 919, authorized a testator to grant a legal usu-fruct only over separate property inherited by children of the marriage with the survivor and not over separate property inherited by children of a prior marriage.
The trial judge granted a limited new trial, stating that the “portion of the judgment granting a usufruct to [the widow] is contrary to the law”. During oral argument at the hearing, the widow’s then counsel suggested that “Article 1499 provides the mechanism for reducing the usu-fruct when it concerns the legitime”. However, there was no pleading or other specific demand that the daughter be required to elect under Article 1499 either to allow the disposition of the usufruct or to receive her legitime in full ownership and abandon to the widow the ownership of the disposable portion.
After reargument, the court rendered judgment on June 21, 1984, stating in the decree that “there be no usufruct given to the defendant, Carol Sicard Blythe over that portion of decedant’s estate inherited by plaintiff, Diana Dawson Blythe.”[5] Clearly applying Act 919, the judge reasoned:
“It is the opinion of this court that La.C.C. Article 890 would be the law which applied on February 22, 1982, the date of death of Donald F. Blythe. According to this article there could be no usufruct given to surviving spouse over the portion of decedant’s estate inherited by issue of a prior marriage. The article provides that the deceased may be testament grant a usufruct to a surviving spouse over so much of his separate property as may be inherited by issue of the marriage with the survivor or as may be inherited by illegitimate children. Applying this article to the facts of the instant case this court holds that there could be no usufruct given to the surviving spouse over the portion of decedant’s estate inherited by Diana Dawson Blythe because she was not issue of the marriage between Carol and Donald Blythe.”
Neither the judgment nor the reasons mentioned Article 1499.
The widow filed an (untimely) application for a new trial. In brief she argued that the trial judge erred in applying Act 919, rather than Act 911, in this case. Alternatively, she argued that even if Act 919 was applicable, the daughter under Article 1499 could only require reduction of the usu-fruct to satisfy the legitime.
The trial judge denied the application on November 14, 1984. The widow then appealed. However, the court of appeal dismissed the appeal as untimely. 466 So.2d 500 (La.App.1985). On application to review the dismissal of the appeal based on *1076 untimeliness, this court denied certiorari. 469 So.2d 985 (La.1985).
On November 5, 1985, the widow, through a new attorney, filed a “Motion for Reconsideration”. She asserted that the June 21, 1984 judgment could not have intended to remove the usufruct over all the property, although the literal wording appeared to do so. The daughter responded by filing an exception of res judicata. The trial judge denied the motion, and the widow appealed. The court of appeal in an unpublished order dismissed the appeal as an unauthorized motion for a review following the dismissal of an untimely appeal. This court denied certiorari. 489 So.2d 921 (La.1986).
On June 23, 1986, the widow filed a “Rule to Show Cause”. She asserted that the daughter, by seeking to invalidate the usufruct in the proceeding which led to the June 21, 1984 judgment, effectively “elected as per C.C. Art. 1499, to receive her legitime in full ownership [and] therefore abandoned the disposable portion” to the widow. She prayed for a “companion judgment to the judgment of June 21, 1984” and requested that the companion judgment declare her the owner of the disposable portion.[6] The daughter again urged the exception of res judicata.
On September 16, 1986, the trial judge rendered judgment on the rule to show cause, decreeing the widow to be the owner of the disposable portion of the testator’s estate. The judge ruled that the daughter had elected under Article 1499 to receive her legitime in full ownership and thereby abandoned the disposable portion to the widow.
The court of appeal affirmed. 519 So.2d 284 (La.App.1988). As to the res judicata issue, the court reasoned that the broadly worded judgment of June 21, 1984 gave no indication the trial judge had considered Article 1499 and that the 1986 judgment then on appeal had been rendered by the same trial judge who apparently considered the demand for relief under Article 1499 to be a new demand. As to the merits, the court concluded that the daughter, by challenging the usufruct bequeathed to the widow, had elected to receive her legitime in full ownership and had thereby abandoned the disposable portion to the widow.
We granted certiorari to review the rulings of the lower courts. 521 So.2d 1139 (La.1988).

Res Judicata

The daughter’s first contention is that the June 21, 1984 judgment became definitive and acquired the authority of the thing adjudged when the widow failed to take a timely appeal. La.C.C.P. art. 1842; La.C.C. art. 3556(31). Clearly, neither the trial court nor this court has any jurisdiction, power and authority to modify the adjudication in the 1984 judgment of any demand by either party. The critical inquiry as to the 1986 suit’s being barred by res judicata is whether the thing demanded in the two suits was the same. La.R.S. 13:4231.[7]
In the first suit the daughter demanded the nullity of all or part of the usufruct based on the Act 919 version of Article 890. (There was no pleading or demand by the widow to require the daughter to elect between allowing the disposition in usufruct or receiving the legitime in full ownership while abandoning the disposable portion to the widow.) In the second suit the mdow (who presented no demands in the first suit) demanded the ownership of the disposable portion on the basis that the daughter, by demanding and receiving her legitime in full ownership, had elected to abandon the ownership of the disposable portion to the widow.[8]
*1077 We conclude that the second suit is not barred by principles of res judicata because the thing demanded in the second suit was not the same as the thing demanded in the first suit.

Article 1499 Election

The critical issue is whether the daughter’s demand in the first suit constituted an election under Article 1499 which entitled the widow to the relief demanded by her in the second suit.
This court explained Article 1499, in the context of its relationship with La.C.C. art. 1752, in Succession of Hyde, 292 So.2d 693 (La.1974).[9] In the Hyde case (as in this case) the testator, who was survived by his second wife and by children of a prior marriage, had left a will giving his wife a usufruct over all of his property. In response to the children’s demand that the donation be reduced to a one-third interest in the property in usufruct, the widow argued that the children’s only options under Article 1499 were to permit the usufruct or to abandon the ownership of the disposable portion. The court noted that a forced heir generally has the right to his legitime in full ownership, but that a special rule applies when the legitime is burdened by a usufruct. The court concluded that when the excessive disposition is in perfect ownership, its validity must be determined under Article 1493; but when the excessive disposition is in usufruct, its validity must be determined in the light of the Article 1499 option. The court explained that Article 1499 protects the forced heir’s right to receive his legitime in full ownership, but places a high cost on the exercise of this right when the testator has created a usu-fruct that exceeds the disposable portion, that cost being abandonment of the disposable portion in full ownership. The decision therefore affirmed the judgment of the court of appeal, which had reversed the simple reduction of the usufruct and reserved the right of the forced heirs to exercise their Article 1499 option.
The same rationale is applicable in the present case in interpreting Article 1499 in the context of its relationship with the Act 919 version of Article 890 (as interpreted by the now definitive June 21, 1984 judgment).[10] To allow a child of a prior marriage to nullify a usufruct to the surviving spouse as not authorized by Article 890 without making an Article 1499 election would give the surviving spouse lesser rights than a stranger who had been given the same usufruct. This is contrary to the legislative trend of granting greater rights of usufruct to surviving spouses. See Acts 1975, No. 680; Acts 1976, No. 227; and-Acts 1979, No. 678. Therefore, when the forced heir in this case attacked the usu-fruct as not being authorized by Article 890, she could have been compelled to make the option required by Article 1499.[11]
The remaining issue is whether the court of appeal erred in ruling that the daughter’s attack on the usufruct constituted an implied election to receive the legitime in full ownership and to abandon the ownership of the disposable portion. From the widow’s standpoint, one could argue that the daughter chose not to allow the usu-fruct when she attacked it in the first suit and must now pay the price of attacking the usufruct by having her ownership of the disposable portion declared abandoned. *1078 On the other hand, one could argue from the daughter’s standpoint that the widow raised the Article 1499 issue in the first suit and that the trial judge impliedly denied her any relief under Article 1499 in the June 21, 1984 judgment which is now definitive. Alternatively, one could argue that the widow’s failure to expressly raise the Article 1499 issue as an affirmative defense in the nature of extinguishment in the first suit forfeited her right to make a demand for a “companion judgment” on the basis of this “defense” in the second suit.
When the forced heir attacked the usu-fruct in the first suit, the donee of the usufruct never called upon her to elect under Article 1499 whether she was willing to pay the steep price imposed by the Code. The parties apparently focused their attention on the question of which version of Article 890 was applicable, the central question on which the trial judge changed his mind after granting a new trial in 1984.
The court of appeal decided the case on the basis of an implied election. The confused nature of this case, as well as the consideration that abandonment should not be lightly presumed, militates against imputing to the daughter the intention of making an election. Furthermore, it is manifestly unfair, in light of the fact that a forced heir is normally entitled to his legi-time in full ownership, to require that the forced heir be bound by the special rule of Article 1499 without expressly being called upon to exercise the extraordinary option contained in that article. Stated otherwise, the donee of a usufruct which impinges upon the forced heir’s legitime, when faced with an attack on the usufruct, cannot sit back and defend against the attack and then, after losing that defense without pleading Article 1499, contend that the forced heir is bound by an implied election.
We conclude that the appropriate and just resolution at this point in this confusing and protracted litigation is to remand the case to the trial court to permit the daughter to exercise her option under Article 1499 either to allow the disposition of the usufruct or to receive her legitime in full ownership and abandon the ownership of the disposable portion to the surviving spouse.[12] If the Article 1499 issue had been raised in the first suit, the only relief that the widow could have demanded was for the daughter to exercise her option and the only relief to which the daughter would have been entitled was exercise of the option.

Decree

For these reasons, the judgments of the lower courts are reversed. The case is remanded to the district court for further proceedings consistent with this opinion.

. La.C.C. art. 1499 provides:
“If the disposition made by donation inter vivos or mortis causa, be of a usufruct, or of an annuity, the value of which exceeds the disposable portion, the forced heirs have the option, either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of.”

. In Item 2nd of the testator’s will, he gave to his daughter in trust:
"all of the community property of which I die possessed, one-half of the separate proper *1074 ty of which I die possessed and all of the forced portion of my estate to which [she] is entitled under the laws of the State of Louisiana.”
In Item 3rd, he gave to his widow in trust:
"the usufruct of one-half of all the separate property of which I die possessed ... as income beneficiary until her death or remarriage.' On the death or remarriage of my wife, Carol S. Blythe, I desire that all of the remaining principal of this trust shall be paid to my daughter’s aforementioned trust, or if she has reached the age of twenty-five years, to her directly. The trustee shall have, at his sole and absolute discretion, the right to dispose of the principal of the trust in any manner he deems it necessary or desirable for the benefit of my wife, Carol Sicard Blythe.” Items 4th and 5th provided as follows:
"Nothing to the contrary withstanding in Items 2nd and 3rd I desire that my wife, Carol Sicard Blythe, have the usufruct of all the property of which I die possessed, but in trust as set forth in Item 3rd, until her death or remarriage.
“When my daughter, Diana D. Blythe, attains the age of 25 years, then I desire that all of the principal of her trust shall be paid to her, subject to the usufruct in Item 4th, reserving unto the Trustee, at his sole and absolute discretion, the right to terminate any part of all of the trust at any time prior to my daughter’s twenty-fifth birthday.”

. Act 919 was a comprehensive revision of the succession articles of the Civil Code. Included in Act 919 was the repeal of Article 916 and the enactment of a new Article 890, which provided:
"If the deceased spouse is survived by descendants, and shall not have disposed by testament of his share in the community property the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
"The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over so much of the separate property as may be inherited by issue of the marriage with the survivor or as may be inherited by illegitimate children.
"A usufruct authorized by this article is to be treated as a legal usufruct and is not an impingement upon legitime.
"If the usufruct authorized by this article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse, or affects separate property, security may be requested by the naked owner.”
Act 911, enacted a few hours later, purported to amend Article 916 (already repealed) and to enact Article 890. Act 911 contained the same provisions as Act 919, except for the second paragraph, which read:
"The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over all or part of his separate property."
Interestingly, each act contained a provision regarding conflicts with other laws. Act 919 contained the following:
“In the event of any conflict between the provisions of this Act and those of any other Act adopted by the legislature at its Regular Session of 1981, regardless of which Act is adopted later or signed later by the governor, the provisions of this Act shall prevail.”
Act 911 contained the following:
"All laws or parts of laws in conflict herewith are hereby repealed. To the extent that the provisions of House Bill No. 817 by Mr. Fernandez, introduced at the 1981 Regular Session of the Legislature of Louisiana, are inconsistent with the provisions of this Act, those provisions of House Bill No. 817 are hereby repealed.”
Comment (a) following Article 890 in Act 919 stated that the new Article 890 changed the law relating to usufruct over community property, *1075 but noted that there was no change in the law relating to the usufruct over separate property, which then allowed a testator to grant a legal usufruct to the surviving spouse over the separate property inherited by children of the marriage with the survivor.

. Article 890 was again amended by Act 1982, No. 445, to adopt the same language as Act 911 of 1981, but the 1982 act did not become effective until after the testator’s death.

. The daughter argues that the judgment was intended to nullify the usufruct over all of the property inherited by the daughter so that she received the entire estate in full ownership. The widow argues that since the testator could grant a usufruct over the disposable portion of his estate to anyone, including a stranger, the judgment was intended to nullify the usufruct only over so much of the property as would be necessary to satisfy the daughter’s legitime. Because of the result we reach, it is not necessary to address the question of the possible ambiguity in the judgment or the possible effect of any ambiguity on the res judicata issue.

. This marked the first time that any pleading by the widow sought any relief based on the application of Article 1499.

. La.R.S. 13:4231 provides:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”

.Significantly, the widow in the second suit did not demand that the court apply the Act 911 version of Article 890 instead of the Act 919 version applied in the June 21, 1984 judgment.
*1077 That issue was adjudicated in the first suit. Right or wrong, the judgment holding the Act 919 version applicable cannot be relitigated.

.La.C.C. art. 1752 provides:
"A man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife, or she to her husband, either by donation inter vivos or by last will and testament, in full property or in usufruct, all of that portion of his estate, or her estate, as the case may be, that he or she could legally give to a stranger.”

. Of course, if the Act 911 version of Article 890 had been applied in the definitive 1984 judgment, a legal usufruct clearly would have been authorized.

. When a usufruct to a surviving spouse confirms the legal usufruct allowed by the present Article 890, Article 1499 does not apply. However, a testamentary usufruct may give rise to the applicability of Article 1499. For a complete discussion of usufructs to the surviving spouse under Article 890, see 3 A. Yiannopoulos, Louisiana Civil Law Treatise — Personal Servi-tudes, §§ 101-105 (2nd ed. 1978).

. See 3 A. Yiannopoulos, Louisiana Civil Law Treatise — Personal Servitudes, § 16 (2d ed. 1978).