652 So.2d 1078 (1995)
Robert Warren ARNOLD, as Executor of the Estate of Lee J. Arnold
v.
Esther R. Arnold FENNO.
No. 94-CA-1658.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1995.
*1079 Eric A. Bopp, Edward S. Bopp, Law Corp., Arabi, for plaintiff/appellee.
Wayne M. Richardson-Harp, New Orleans, for defendant/appellant.
Before BARRY, ARMSTRONG and LANDRIEU, JJ.
BARRY, Judge.
Esther Arnold Fenno appeals a judgment which orders her to return $20,000 to her deceased brother's estate. We affirm.

Facts
Lee Arnold purchased four certificates of deposit from First National Bank of St. Bernard Parish between March 1, 1985 and December 1, 1986. He executed a power of attorney for each CD which permitted his sister Esther Arnold Fenno to deposit, withdraw and transfer the funds. Esther testified *1080 that she withdrew the CDs on February 3, 1988 on Lee's instruction. FNB records show that on February 3, 1988 the bank issued cashier's checks payable to Lee J. Arnold or Esther Fenno for $9,959.85, $5,000, $2,484.24 and $2,486.86, the cash value less early withdrawal charges. Esther testified that Lee instructed her to give the funds from one $2,500 CD to his friend Mary (Maria) Kanton and for Esther to keep the other checks. She deposited the checks (about $17,500) into a joint bank account she had with her husband.
Lee Arnold executed a will on February 4, 1988 and bequeathed the forced portion of his estate to his three children (Lester Arnold, Robert Arnold and Shirley Arnold Patrick) and the disposable portion to Esther.
On November 25, 1988 Lee executed an "Act of Donation" by which he gave a house trailer valued at $5,000 to Esther. That same day Esther's husband Howard made a check for $5,000 payable to Lee and Lee signed a receipt. That check was negotiated December 14, 1988. On December 22, 1988 Lee sent a $5,000 draft to Esther.
In January 1989 Lee was hospitalized for leukemia. Lester Arnold testified that he informed his father in January 1989 that Esther had cashed the CDs. Robert Arnold corroborated that testimony. Robert initially testified that Lee learned about the CDs in December 1988, but then stated that Lee did not know the CDs had been cashed until January 1989.
On January 22, 1989 Lee executed an olographic will which revoked all prior wills and he left his entire estate to his three children. He also signed a statement that was written by his daughter-in-law stating that he "did not wish to donate or transfer any of (his) property to Esther R. Fenno at any time." That statement is dated January 21, 1989 but there is testimony that it was signed at the same time as the olographic will. Esther Arnold testified that Lee was confused when he signed the will and statement. Lester Arnold, his wife Dolores, and two hospital employees testified that Lee was coherent. Lee died on February 3, 1989.
Robert Arnold, as executor, sued Esther for conversion of the trailer and the CDs. On April 10, 1990 the trial court ruled that Esther owned the trailer pursuant to a valid transfer. Robert did not appeal that judgment. On November 29, 1993 the trial court ordered Esther to return $20,000, the value of the CDs, to the estate. The judge did not issue reasons for judgment. Esther's appeal argues that Lee donated the CDs to Esther and Ms. Kanton and he had the requisite donative intent for a valid donation; that if the olographic will is valid the CDs were not part of the estate; and there was no evidence of conversion.

Donation
A donation inter vivos is an act by which the donor irrevocably divests himself of the thing given, in favor of the donee who accepts it. La.C.C. art. 1468. The donee has the burden to prove a donation and the proof must be strong and convincing. Succession of Serio, 597 So.2d 91, 93 (La.App. 4th Cir.), writ den. 600 So.2d 677 (La.1992); Succession of Young, 563 So.2d 502, 506 (La. App. 4th Cir.), writ den. 568 So.2d 1055 (La.1990).
The Civil Code prescribes the form requirements for donations inter vivos and mortis causa. La.C.C. art. 1467. A donation inter vivos of corporeal and incorporeal things generally must be by authentic act. La.C.C. arts. 1536, 1538. An exception is the manual gift of a corporeal movable accompanied by actual delivery:
The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.
La.C.C. art. 1539. See Succession of Young, 563 So.2d at 506.
Former La.R.S. 10:3-201(4) eliminated the requirement of an authentic act for the inter vivos donation of a negotiable instrument, and provided that the form of such a donation is governed by the Commercial Laws of Louisiana. Succession of Serio, 597 So.2d at 93. The statute superseded in part Succession of Miller, 405 So.2d 812 (La. 1981) (on rehearing), which held that a bearer *1081 bond was insusceptible of manual gift because it is an incorporeal movable. R.S. 10:3-201(4) was amended by Acts 1992, No. 1133, § 3, effective January 1, 1994. However, each CD was stamped "NOT-TRANSFERABLE" which makes R.S. 10:3-201(4) inapplicable.
Esther Fenno argues that money from the CDs is subject to a manual gift, that there was delivery of the money, and the record establishes donative intent. The trial judge did not specify the basis for his holding, but implicitly held that the donation in February 1988 was invalid.
The credit right evidenced by a CD is an incorporeal movable and not subject to a manual gift. Succession of Amos, 422 So.2d 605, 608 (La.App. 3d Cir.1982). See Montet v. Lyles, 93-1724 (La.App. 1 Cir. 6/24/94), 638 So.2d 727, 729, writ den. 94-1985 (La. 11/18/94), 646 So.2d 377. However, cash withdrawn from a CD is a corporeal movable and subject to a manual gift provided there is actual delivery of the funds. Succession of Amos, 422 So.2d at 608. Compare Succession of Miller, 405 So.2d at 818, which distinguished the right to funds in a savings account from cash withdrawn from the account.
The mere authorization to withdraw funds under a power of attorney does not constitute a donation of the funds, but if the evidence shows that the power of attorney was executed to establish a donation and the donor's volition is still operative when the donee receives the cash, then there is a valid donation by manual gift. Succession of Gorman, 209 La. 1092, 26 So.2d 150, 152 (1946). In Gorman the decedent gave the donee a power of attorney to withdraw funds from an account, handed the passbook to the donee and told a witness that she was giving it to the donee in the witness's presence. Testimony of witnesses other than the donee established the decedent's intent to give the money to the donee. The evidence established delivery and donative intent.
The only evidence that Lee intended to give the funds to Esther is Esther's self serving testimony. Contradicting that is Lee's January 21, 1989 written statement that he did not intend to make a donation to Esther. That statement was witnessed by Gloria Freeman, a disinterested hospital employee who testified that decedent was very cognizant when he signed it. Additionally, both of Lee's sons testified that they informed Lee of the status of the CDs for the first time in January 1989.
A birthday greeting from Lee to Esther weeks after the February 1988 CD transaction does not show donative intent. That handwritten note states:
In your letter you mentioned opening another account. I said I'm trying to get another $2500 to gather [sic] as soon as I can add what you already. [sic] It looks like it is going to be a while before I have it....
Esther argues that the language suggests Lee gave her the money. The note is ambiguous (at best) and does not establish donative intent.
The trial court apparently found there was no valid donation of the CDs. That finding is not manifestly erroneous because the record does not show that Lee Arnold intended to give the money to Esther.

Olographic Will
Esther argues the trial court erred by finding the January 22, 1989 will was valid and not written through duress or confusion. That argument has no merit.
An olographic testament must be entirely written, dated and signed by the testator and is subject to no other form. La.C.C. art. 1588. Lee's olographic will meets those requirements. The evidence does not establish that Lee was confused or coerced into writing the will. Though not required by law, the will was witnessed by three persons, including two disinterested hospital employees who testified that Lee knew what he was doing when he executed the will. There is no evidence of coercion.

Effect of Olographic Will
Esther argues that if the olographic will is valid, the money had been previously donated and is not subject to the will.
*1082 There was no donative intent and the donation of the funds was not valid. Therefore, the funds are part of the estate and subject to distribution under the olographic will.

Conversion
Esther submits that the trial court erred if the judgment was based on a finding of conversion of the funds. The trial court did not rule on conversion.
A conversion is an act in derogation of a person's possessory rights, and is any wrongful exercise or assumption of authority over another's goods depriving him of the possession permanently or for an indefinite time. Whitley v. Manning, 623 So.2d 100, 102 (La.App. 1st Cir.), writ den. 627 So.2d 656 (La.1993).
We need not determine whether there was a conversion. Because the evidence is insufficient to establish donative intent, there was no donation and the funds are part of Lee's estate.
The judgment is affirmed.
AFFIRMED.