660 So.2d 61 (1995)
SUCCESSION OF Rudolph F. BECKER, III.
No. 94-CA-1491.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1995.
Rehearing Denied September 26, 1995.
Vincent T. LoCoco, Henrik A. Pontoppidan, Vincent B. LoCoco, New Orleans, for appellants.
William L. Von Hoene, Jr., New Orleans, for appellee William F. Finegan, Executor.
Phillip A. Wittman, Ellen M. Chapin, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for appellee, Patricia McGee Becker.
Before BARRY, ARMSTRONG and LANDRIEU, JJ.
ARMSTRONG, Judge.
This is an appeal from the dismissal of a petition for possession of a particular legacy. The petitioners-appellants are Diane Catherine Becker and Pamela McGinn Becker-Koch. *62 They are the adult children of the late Judge Rudolph Becker, III. They are the legatees of a particular legacy in Judge Becker's will. Also, of course, they are forced heirs of Judge Becker. The appellees are the executor of Judge Becker's estate, William F. Finegan, and Judge Becker's wife, Patricia McGee Becker, who also is a legatee of Judge Becker's will. The petitioners are not children of Judge Becker's marriage to Patricia McGee Becker but are, instead, children of a previous marriage of Judge Becker.
In his will, Judge Becker left to the petitioners a particular legacy of his interests in a lease and sublease of certain immovable property. Also in his will, Judge Becker left his wife a lifetime usufruct over his interests in the lease and sublease. The interests in the lease and sublease produce income on a regular basis. The lease will expire in about twenty years and the sublease will expire in about eleven years. The petitioners are concerned that, in view of Patricia McGee Becker's life expectancy of about twenty-three years, the lease and sublease will expire prior to the end of the usufruct with the result, the petitioners argue, that the petitioners will receive no economic benefit from their legacy.
It appears to be uncontested that the particular legacy of the interests in the lease and sublease is necessary to provide the forced portion due the petitioners as the forced heirs of Judge Becker. Indeed, apparently, this particular legacy was the petitioner's only legacy in Judge Becker's will.
Of course, it is uncontested that Judge Becker left the naked ownership of the interests in the lease and sublease to the petitioners. However, the petitioners argue that, under the Civil Code, it was impermissible for Judge Becker to grant to his wife a usufruct over the petitioners' particular legacy. Also, the petitioners argue that, if the usufruct at issue is proper under the Civil Code, then the Civil Code article so permitting the usufruct at issue is unconstitutional. For the reasons that follow, we affirm the judgment of the trial court.
Civil Code article 890, as an exception to the general rule that a testator may not burden the forced portion with a usufruct, see La.Civ.Code art. 1710, allows a usufruct in favor of a surviving spouse over the entire estate.
If the deceased spouse is survived by descendants and shall not have disposed by testament of his share in the community property, the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over all or part of his separate property.
A usufruct authorized by this article is to be treated as a legal usufruct and is not an impingement upon legitime.
If the usufruct authorized by this article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner.
La.Civ.Code art. 890.
The second paragraph of Civil Code article 890, dealing with separate property, is squarely applicable to the present case, because Judge Becker's particular legacy to the petitioners, his interests in the lease and sub-lease, was separate property. The third paragraph of Civil Code Article 890 is of critical importance because it provides that a usufruct authorized by Civil Code article 890 (i.e., a usufruct in favor of a surviving spouse) is not an "impingement upon legitime." In other words, forced heirs have not been deprived of their forced portion simply because a usufruct in favor of a surviving spouse has been imposed upon the forced portion.
The last paragraph of Civil Code article 890 is of some importance in the present case because, as will be discussed below, the petitioners argue that Civil Code article 890's authorization of a surviving spouse usufruct over a forced portion does not extend to a situation involving a forced portion of children *63 of a prior marriage. The last paragraph of Civil Code article 890 provides that security may be requested by the naked owner when Civil Code article 890 "affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse." Obviously, by providing for security when it affects children of a prior marriage, Civil Code article 890 contemplates that it will apply to the inheritances of children of prior marriages.
When one takes into account Civil Code article 890's provision for the surviving spouse usufruct, its provision that the surviving spouse usufruct may be imposed upon a forced portion, and its provision that heirs who are children of a previous marriage may request security, it is readily apparent that Civil Code article 890 contemplates imposition of a surviving spouse usufruct on the forced portion of heirs who are children of a previous marriage. Our view in this regard is consistent with that of several scholarly commentaries. See La.Civ.Code art. 890, Editor's Note at 212 (Yiannopoulos ed., West 1994); Samuel, Shaw & Spaht, Successions and Donations, 45 La.L.Rev. 575, 581 (1984); Comment, New Hope For The Survivor: The Changes In The Usufruct Of The Surviving Spouse, 28 Loy.L.Rev. 1095, 1097 (1982).
Civil Code article 890 clearly authorizes the surviving spouse usufruct in the present case, but petitioners argue that the usufruct at issue is, nonetheless, prohibited by Civil Code article 1752:
A man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife, or she to her husband, either by donation inter vivos or by last will and testament, in full property or in usufruct, all of that portion of his estate, or her estate, as the case may be, that he or she could legally give to a stranger.
La.Civ.Code art. 1752.
The petitioners argue that, because of Civil Code article 1752, Judge Becker could not provide the usufruct at issue to his surviving spouse because he had children of a prior marriage (the petitioners) and he could not have provided that usufruct to a "stranger" (someone other than the surviving spouse) because it would constitute an impingement on the legitimate of the petitioners as forced heirs. It is readily apparent that the petitioners read Civil Code article 1752 to provide that, when there are children of a prior marriage, the testator may provide a usufruct to the surviving spouse only over that portion of the estate that could be given to someone other than the surviving spouse. We disagree.
Civil Code article 1752 does not state that "only that portion" that could be left to someone else can be subject to the surviving spouse usufruct. The article instead says that "all that portion" that can be left to someone else can be subject to the surviving spouse usufruct. The word "only," or any synonym thereof, is conspicuously absent from Civil Code article 1752. In other words, Civil Code article 1752 is phrased in entirely permissive, rather than restrictive, terms.
With Civil Code article 890 clearly contemplating a surviving spouse usufruct even when there are children of a prior marriage (particularly the last sentence of that article), and Civil Code article 1752 phrased in purely permissive terms, we do not believe that the latter article can be applied to restrict the former article. That is, we do not believe that Civil Code article 1752 can be applied to eliminate the Civil Code article 890 usufruct in favor of the surviving spouse when there are children of a previous marriage.
In fact, Civil Code article 1752, in its present form, really has no effect. As we have discussed, the article is in no way restrictive. It permits whatever portion of the estate that may be left to anyone (the disposable portion) to be left to the surviving spouse. Of course, as the disposable portion may, as a general matter, be left to anyone, it hardly seems necessary to have an article to say that it may be left to the surviving spouse. The explanation for this seeming anomaly lies in the history of Civil Code article 1752. The Supreme Court discussed that history in Succession of Hyde, 292 So.2d 693 (La.1974).
Until 1882, the disposable portion between married persons coming within the purview of article 1752 and its predecessor *64 articles was the least child's portion in usufruct not to exceed 1/5 of the donor's estate, Act 13 of 1882 increased the disposable portion under article 1752 to 1/3 of the donor's estate, in full property or in usufruct. Article 1752 was again amended in 1916 to increase the disposable portion to all that could legally be given a stranger.
292 So.2d at 695. Thus, prior to its 1916 amendment, Civil Code article 1752 did have a substantial restrictive effect.
The 1916 legislature chose to amend Civil Code article 1752 to remove its restrictive effect, thus leaving it with no practical effect, rather than simply repealing the article. Perhaps this was because of the long history of restriction by Civil Code article 1752 and the legislature's desire to emphasize that the restriction was now abolished. In any event, the decision to amend rather than repeal explains the seeming anomaly of an article which specifically permits what is, as a general proposition, already permitted.
Civil Code article 1752 was repealed by Act 147 of 1990. This was done pursuant to the recommendation of the Louisiana State Law Institute whose Reporter stated that the article "serves no useful purpose and should have been repealed a long time ago." Minutes of Louisiana State Law Institute Council meeting of December 15-16, 1989 at 4.
Act 147 of 1990 made a number of changes to the law in addition to, and quite apart from, repealing Civil Code article 1752. One of the changes made by Act 147 of 1990 was to limit forced heirship to persons under the age of twenty-three. This aspect of Act 147 of 1990 was held to be unconstitutional in Succession of Lauga, 624 So.2d 1156 (La. 1993). The Supreme Court declared the entire Act 147 of 1990 void. Id. However, the Supreme Court made no reference to Civil Code article 1752 and it is readily apparent from the Lauga opinion (discussed in more detail below) that the repeal of Civil Code article 1752 had nothing to do with the unconstitutionality of act 147 of 1990. Thus, it was merely through the happenstance of the repeal of Civil Code article 1752 being done by the unconstitutional Act 147 of 1990 that Civil Code article 1752 remains in the Civil Code. In other words, the Lauga decision does not diminish the explicit view of the Louisiana State Law Institute, and the apparent view of the 1990 legislature, that Civil Code article 1752 "serves no useful purpose." Thus, the Louisiana State Law Institute's recommendation that the article be repealed, and the actual legislative decision to repeal the article, strengthens our conviction that Civil Code article 1752 has no real effect in its current form and certainly cannot be used to restrict the application of Civil Code article 890.
The petitioners rely principally upon the Fifth Circuit's decision in Succession of Suggs, 612 So.2d 297 (La.App. 5th Cir.1992), joint motion to withdraw writ application granted and request to vacate judgments of lower courts denied, 620 So.2d 860 (La.1993). The Suggs court held that Civil Code article 890 had to be interpreted in conjunction with and, in effect, restricted by, Civil Code article 1752. In particular, the Suggs court held that:
[A] decedent may leave a usufruct over the forced portion of his estate to the surviving spouse of his first marriage, but, if there are children of a first marriage, he cannot leave such a usufruct to the surviving spouse of a second or subsequent marriage.
612 So.2d at 298.
After having carefully considered the opinion of the Suggs court, we respectfully disagree. For the reasons set out above, we do not believe that Civil Code article 890 needs to be interpreted in light of Civil Code article 1752 and, in particular, we do not believe Civil Code article 890 is restricted by Civil Code article 1752.
The petitioners also argue that application of Civil Code article 890 to situations such as the present case, in which the forced portion is subject to the surviving spouse usufruct, is unconstitutional. The petitioners invoke Article XII, Section 5 of the Louisiana Constitution of 1974 which states:
No law shall abolish forced heirship. The determination of forced heirs, the amount of the forced portion, and the grounds for disinherison shall be provided *65 by law. Trusts may be authorized by law, and a forced portion may be placed in trust.
Specifically, the petitioners cite the prohibition against any law "abolishing" forced heirship and argue that, in the present case, the application of Civil Code article 890 has "abolished" forced heirship. The petitioners rely exclusively on the Supreme Court's decision Succession of Lauga, 624 So.2d 1156 (La.1993). Because the petitioners' entire argument as to the constitutionality of Civil Code article 890 is based upon Lauga, we will confine the rest of our discussion of the issue to the Lauga decision.
In Lauga, the issue was the constitutionality of an amendment to the Civil Code which amendment provided that only children under twenty-three years of age would be forced heirs. The Supreme Court held this amendment to be unconstitutional. In particular, the Supreme Court held that the amendment violated the above-quoted Article XII, Section 5 of the Louisiana Constitution of 1974 because the amendment amounted to an "abolition" of forced heirship.
However, because of basic differences between the issue in Lauga, and the issue raised by the petitioners in the present case, we do not believe that the Lauga decision supports the petitioners' argument. In Lauga the Civil Code amendment involved made a distinction among children, based upon age, as to whether or not they would be forced heirs. This distinction allowed for extreme inequality in inheritances among children an inequality which forced heirship of equal shares of a forced portion was designed to mitigate. It was this allowance of unmitigated inequality of inheritance which resulted in the Lauga holding that the Civil Code amendment at issue in that case was unconstitutional. (Of course, as no more than one-half of the estate is the forced portion, and at least one-half is the disposable portion, forced heirship only mitigates and does not totally eliminate possible inequality of heirship.)
The Supreme Court stated the Lauga issue thus:
We are called upon to decide whether a law that purports to abrogate forced heirship's principle and right of equality of heirship among children is unconstitutional because it violates Article XII, Section 5 of the 1974 Louisiana Constitution, which declares that "[no] law shall abolish forced heirship."
624 So.2d at 1157 (emphasis added). Thus, the Supreme Court framed the issue of Lauga in terms of "equality of heirship."
The Supreme also summarized its reasoning in Lauga in terms of equality of heirship:
The declaration that "[n]o law shall be passed abolishing forced heirship" originally was placed in the 1921 Louisiana Constitution to preserve the core principle of that legal institutionthe equality of heirship between children as to a forced portion of their decedent's estate. The purpose of the constitutional provision was to further the state interests in the prevention of excessive concentrations of wealth and the promotion of family harmony and solidarity through deterrence of intra-family discord and litigation. Subsequently, our courts, commentators, and the legislature interpreted the constitutional provision as guaranteeing to every child an individual right to an equal share of a forced portion of his or her decedent's estate. According to the weight of scholarly commentary and juristic dictum, the constitutional provision allowed legislative enactment of implemental and regulatory laws subject to the limitation of these basic precepts.
Article XII, § 5 of the 1974 Louisiana Constitution continues in effect the essential meaning of the law established under Article IV, § 16 of the 1921 Louisiana Constitution. Article XII, § 5 models its stipulations on the very similar provisions of the 1921 Constitution and the construction previously placed on those provisions by the jurisprudence. Accordingly, we conclude that Article XII, § 5 guarantees the individual right of a child toan equal share of a forced portion of his or her decedent's estate and maintains the correlative public principle of equality of heirship, which furthers the goals of dispersion of wealth, family solidarity, and reduction of litigation. Subject to and not inconsistent with these basic precepts, the legislature may *66 pass laws implementing and regulating forced heirship.
Civil Code article 1493, as amended in 1989 and 1990, is unconstitutional because it violates Article XII, § 5 in three different but interrelated ways. First, the law violates and deprives each plaintiff of his individual right as a child to an equal share of forced portion of his decedent's estate; furthermore, the law professes to abolish the right of forced heirship as an individual constitutional right and relegate it to the status of a statutory entitlement. Second, the law purports to abrogate completely Article XII, § 5's guarantee of the core principle of equality of heirship among children with respect to a forced portion of their decedents' estates. Third, the law purports to render wholly ineffective the legal institution of forced heirship to further the state purposes for which it was elevated to constitutional status. In fact, the law promotes the very evils that the forced heirship guarantee was designed to combat, that is, the unjust disinheritance of children which leads to family disharmony and litigation among siblings and the concentration of family estates in fewer than all the children, to the economic detriment of society and the resulting impoverishment of the disinherited children. In sum, amended Civil Code article 1493 abolishes the legal institution of forced heirship with respect to all of its ends and purposes as effectively as would a simple repeal of all forced heirship laws.
624 So.2d at 1158 (emphasis added). Thus, the constitutional flaw in the amendment to the Civil Code lay in its allowance of extreme inequality of inheritances.
In contrast, Civil Code article 890 and its application as in the present case presents no danger of extreme inequality of inheritances. The article does not address or affect the issue of the division of the forced portion among children. Consequently, the Lauga decision provides no reason or basis to question the constitutionality of Civil Code article 890.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED
BARRY, J., concurs with reasons.
BARRY, Judge, concurring with reasons.
La.C.C. art. 1752 as amended by Acts 1916, No. 116 increased the disposable portion between persons in a second or subsequent marriage to that which could legally be given to a stranger. The amendment allows the donor to do what is generally already permitted, i.e., dispose of the disposable portion in any manner he sees fit. Succession of Hyde, 292 So.2d 693 (La.1974). Article 1752 was subsumed by La.C.C. art. 1493 (which limits the disposable quantum) and was rendered superfluous. Dykes & Parker, The Usufruct of the Surviving Spouse Under Louisiana Civil Code Article 890 and the Legitime of the Decedent's Children by a Prior Marriage, 55 La.L.Rev. 139, 147 (1994).
The subsequent amendments to La.C.C. art. 890 show clear legislative intent to extend and allow confirmation of Art. 890's usufruct to the surviving spouse over the deceased's community and separate property regardless of whether the descendants were born of a prior marriage. Id. at 150. See La.C.C. art. 890, comment (a). That completed the abrogation of the distinction between first and subsequent spouses and relegated Art. 1752 to antiquity.
When Acts 1990, No. 147 was held unconstitutional in Succession of Lauga, 624 So.2d 1156 (La.1993), Art. 1752 was reinstated in form. However, Lauga did not reverse the relevant statutory history or transform Art. 1752 into a limitation on the Art. 890 usufruct which is unrestricted as to issue of the marriage. The contested disposition is appropriate under the Code.
The Becker heirs argue that the usufruct on the leasehold interest deprives them of their constitutionally protected rights as forced heirs because the leasehold interest is worthless to them. They note that Article 890's requirement for security is meaningless because there is nothing to secure once the lease has expired.
The majority correctly states that Lauga does not support the Becker heirs' argument. *67 However, that does not dispose of the issue. The majority suggests that because the usufruct does not affect the equality of the division of the forced portion, it is constitutional. But the usufruct is not attacked on the basis of unequal division of the forced portion; rather, it is attacked as allowing a divestiture of the forced portion.
Art. 890 does not restrict the type of things over which the legal usufruct extends, and a usufruct on a lease is permitted under La.C.C. art. 544. See La.C.C. art. 544, comment (d). The usufructuary's (Mrs. Becker) life expectancy apparently exceeds the term of the leasehold interest and money derived therefrom goes to the usufructuary for the duration of the usufruct.
The leasehold interest has a net value of $81,543.66. There is no factual basis to conclude that the usufruct deprives the Becker heirs of their legitime. Mindful that the value of the asset decreases with time and its value is intricately tied to payments received by the sublessee, the issues to be decided are classification of the asset over which the usufruct is given and the possible obligation of the usufructuary to account to the Becker heirs.
Whether the usufructuary must post security or account at the termination of the usufruct are matters not before this Court.
I respectfully concur.