[gCANNELLA, Judge.
Judgment was rendered in this succession proceeding distributing the estate of James A. Gilbert (decedent) between his wife, Fern LeBlane Gilbert (Fern Gilbert), and his two daughters from a prior marriage, Carole Gilbert Casey and Patti Gilbert Theriot (the Gilbert daughters). All parties appeal. For the reasons which follow, we affirm in part, reverse in part and remand.
Decedent had been married to Ada Naomi Gilbert and two children were born of this union, the Gilbert daughters. Ada Naomi Gilbert died on August 3, 1985, leaving the disposable portion of her estate to decedent and the forced portion to her children, subject to a life usufruct in favor of decedent.
On September 2, 1989, decedent married Fern Gilbert. He died on October 11, 1991 after a prolonged battle with cancer and diabetes, during which he was hospitalized repeatedly over the last year of his life. While hospitalized on February 5,1991, decedent wrote his Last Will and Testament. The will was | .-¡submitted for probate. In the will, decedent left a lifetime usufruct over his entire estate, both separate and community property, to his wife, Fern Gilbert. He bequeathed to the Gilbert daughters the naked ownership of his interest in his residence at 4304 Purdue Drive, Metairie, Louisiana. He left the remainder of his estate to Fern Gilbert in full ownership. He also appointed Fern Gilbert as executrix of his estate.
On the same day the will was executed, February 5, 1991, decedent also executed a power of attorney appointing Fern Gilbert as his attorney in fact, with very broad powers, including the power to make donations of his property to such persons as she may select, including herself. It was stipulated by all parties that during decedent’s lifetime, he made donations to the Gilbert daughters totaling $78,200, or $39,100 each, and to Fern Gilbert totaling $78,139.78.
On December 16, 1991, after presenting the February 5, 1991 will for probate, Fern Gilbert was confirmed as executrix of decedent’s succession. On February 20, 1992, the Gilbert daughters brought an action to annul decedent’s will and a separate action against Fern Gilbert seeking possession of their inheritance from their mother’s estate. On September 1, 1993, Fern Gilbert and the Gilbert daughters reached a settlement concerning the mother’s estate in which certain movables, including $33,000 cash, were transferred to the Gilbert daughters. Subsequently, on March 4, 1994, following the decision by the Louisiana Supreme Court in *1215 Succession of Lauga, 624 So.2d 1156 (La. 1993)[1], the Gilbert daughters filed an amended petition seeking their forced portion from 14their father’s estate.
The main issues presented for trial here in the succession proceedings, after stipulations were entered, were: (1) whether a $67,000 alleged donation to Fern Gilbert by decedent was a valid donation; (2) whether inter vivos donations to the Gilbert daughters and Fern Gilbert should be fictitiously added back into the succession to determine the forced portion to which the Gilbert daughters were entitled; and (3) whether the Gilbert daughter’s forced portion could be legally burdened by a life usufruct in favor of Fern Gilbert or, put another way, whether such a usufruct improperly impinged on their legitime.
In rendering judgment on December 14, 1994, the trial court held that the $67,000 donation to Fern Gilbert by decedent was a valid inter vivos donation. The trial court also held that the inter vivos donations made by decedent should not be added to the estate mass in determining the amount of the forced portion. The trial court held that the usufruct in favor of Fern Gilbert over the Gilbert daughter’s forced portion was an impermissible impingement on their legitime and was thus invalid. Finally, the trial court determined, by calculating estate assets and liabilities, that the forced portion to which the Gilbert daughters were entitled was less than the value of the house which they were bequeathed by their father and thus the disposition of the remainder of his estate to Fern Gilbert did not impinge on their legi-time. Both Fern Gilbert and the Gilbert daughters appealed.
The Gilbert daughters challenge both factual and legal determinations by the trial court. While we find legal error in the trial court’s judgment, we cannot conclude the trial court’s factual determinations were clearly wrong or manifestly erroneous.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the trier’s findings of fact in the absence of | ..¡manifest error or unless he is clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux, Do-mingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether his conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
In the instant ease, the trial court made three factual determinations, assigned as error by the Gilbert daughters, which we find, based on the record before us, were not clearly wrong or manifestly erroneous. First, the Gilbert daughters argued that the trial court erred in finding that decedent made a valid inter vivos donation to his spouse in the amount of $67,000.[2]
Decedent had approximately $106,000 in cash, including monies on deposit in a cheeking account and in certificates of deposit (CD) at various institutions. Fern Gilbert was not named on any of the certificates of deposit. In February of 1991, while decedent was hospitalized, he gave his spouse, Fern Gilbert, a power of attorney. According to her testimony, decedent told her to *1216 close all of his accounts and to open new accounts in her name alone. She argues that decedent’s expressions to her, combined with the execution of the power of attorney in her favor expressly granting her the power to make donations to herself, evidence a donation of those funds from decedent to her. |6Upon withdrawing the funds and placing them in accounts in her name, the donation was complete.
The Gilbert daughters argue that Fern Gilbert’s self serving testimony of their father’s intent does not suffice to meet her burden of proving a donation. If that were the only evidence we might agree with the Gilbert daughters.
A donation inter vivos is an act by which the donor irrevocably divests himself of the thing given, in favor of the donee who accepts it. La.C.C. art. 1468. The Civil Code prescribes the form requirements for donations inter vivos and permits the inter vivos donation of a corporeal movable by manual gift, that is, the giving of the corporeal movable effects, accompanied by a real delivery. La.C.C. art. 1539. The credit right evidenced by a CD is an incorporeal movable and not subject to manual gift. Arnold v. Fenno, 94-1658 (La.App. 4th Cir. 3/16/95), 652 So.2d 1078. However, cash withdrawn from a CD is a corporeal movable and subject to a manual gift provided there is actual delivery of the funds. Arnold v. Fen-no, supra.
The mere authorization to withdraw funds under a power of attorney does not constitute a donation of the funds, but if the evidence shows that the power of attorney was executed to establish a donation and the donor’s volition is still operative when the donee receives the cash, then there is a valid donation by manual gift. Succession of Gorman, 209 La. 1092, 26 So.2d 150 (1946); Arnold v. Fenno, supra.
The record indicates that the power of attorney in favor of Fern Gilbert was executed on the same day that decedent executed a new will, leaving all of his disposable property to Fern Gilbert, as well as a usufruct over the legitime inherited by the Gilbert daughters. The power of attorney expressly authorized Fern Gilbert to make donations to herself. Fern Gilbert testified that decedent told her, when he executed the power of attorney, to withdraw the funds and Aplace them in an account for herself. Decedent’s donative intent is established by the record. Thus, we do not find manifest error in the trial court finding that decedent made a valid donation of these funds to Fern Gilbert.
Moreover, we fail to see the significance of this issue in view of the fact that decedent, in his will, leaves his entire estate to Fern Gilbert. Thus, whether by valid inter vivos donation or donation mortis causa, the result will be the same, that is, that Fern Gilbert acquires the assets.
The Gilbert daughters argue that the trial court erred in awarding attorney’s fees in the amount of $10,672 as a succession debt. They contend that the attorney’s fees were spent on Fern Gilbert’s personal legal problems rather than on estate business. We disagree.
First, Fern Gilbert alleged attorney’s fees in the amount of $23,344 as a succession debt. The trial court discounted that amount and awarded less than half of what was requested, recognizing no doubt, that a portion of the attorney’s time was spent on Fern Gilbert’s personal legal matters and not solely succession matters. However, the Gilbert daughter’s argument that all of the legal fees should be disallowed as a succession expense, because they were spent to preserve Fern Gilbert’s donations, lacks merit. Fern Gilbert was the succession executrix. As such, she was required to defend the succession against claims against it. La.C.C.P. art. 3249. Decedent left a Last Will and Testament and claims were brought against his succession to defeat the testator’s intentions. Accordingly, we find no error in the trial court determination that $10,672 in attorney’s fees could be deducted as a succession expense in an estate that totaled over $200,-000.
Finally, the last factual determination disputed by the Gilbert daughters involves the trial court’s allowance of succession expenses in the amount of $2,307 for automobile insurance and $40 for an automobile *1217 license plate, both for |8an automobile that belonged to the succession and was being used by Fern Gilbert.
Fern Gilbert testified that she paid these expenses from the succession because she utilized the automobile to handle estate matters. She testified that she uses the automobile to do banking for the estate and to check on estate property.
In ruling that these were legitimate succession expenses, we do not find from the record that the trial court was clearly wrong in his findings. Accordingly, upon reviewing the record and the Gilbert daughters’ claims regarding factual determination by the trial court, we find no manifest error in the trial court’s factual findings.
To the contrary, however, we do find legal errors in the trial court judgment as argued by both the Gilbert daughters and Fern Gilbert.
First, the Gilbert daughters argue that the trial court erred in excluding the two inter vivos donations to Fern Gilbert of $78,139.78 and $67,000, from the calculation of the active mass of the estate in arriving at the disposable portion and the legitime. We agree.
La.C.C. art. 1505, which provides the method of calculating the disposable portion on the mass of the succession, states in pertinent part:
A. To determine the reduction to which the donations, either inter vivos or mortis causa, are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor’s decease, in the state in which it was at the period of the donation.
B. The sums due by the estate are deducted from this aggregate amount and the disposable quantum is calculated on the balance,....
Thus, unless specifically exempt by statute, all inter vivos donations must |9be fictitiously added back to the property the testator possesses at the time of his death to arrive at the estate mass in calculating the disposable portion.
Fern Gilbert argues that La.R.S. 9:2354 provides an exclusion for the donations in her favor. That statute provides an exemption for donations inter vivos made to a “spouse of a previous marriage” from the calculation of the succession mass. It does not provide a correlating exemption for the surviving spouse.[3] We find no provision exempting the inter vivos donations made by decedent to his surviving spouse from being fictitiously brought back into the estate for the purposes of calculating the succession mass and the disposable portion of the estate under La.C.C. art. 1505. Accordingly, we find that the trial court erred in excluding the value of those donations from the calculation of the succession mass.
Fern Gilbert argues that if the value of her donations are considered in calculating the succession mass then the $78,200 in donations to the Gilbert daughters should also be added to the estate to determine the succession mass. We disagree.
As stated above, all inter vivos donations are fictitiously added back to the estate to determined the succession mass unless they are statutorily exempt. The donations made by decedent to his daughters are statutorily exempt from calculation in the active mass by La.C.C. art. 1502, which provides in pertinent part:
| ipAny donation inter vivos, from the donor to his descendants, exceeding the quantum of which a person may legally dispose to the prejudice of forced heirs, is not reducible to that quantum if each such forced heir and the root represented by each forced heir receives the same value of *1218 property by donation inter vivos during the calendar year. Such donation inter vivos shall not be included in the calculation of the disposable portion as set forth in Article 1234 nor as set forth in Article 1505.
The record indicates that the donations to the Gilbert daughters were made to each forced heir in the same amounts in each calendar year. Therefore, the donations to the Gilbert daughters, because expressly exempt by La.C.C. art. 1502, are not to be included in the calculation of the succession mass to arrive at the disposable portion. Fern Gilbert’s arguments to the contrary lack merit.
Next, the Gilbert daughters argue that the trial court erred in not including in the calculation of the forced portion, the fruits earned by the estate since the date of the testator’s death. We find no error in this ruling by the trial court.
The fruits earned subsequent to the testator’s death do not comprise part of the estate mass in determining the disposable portion. Rather, values are fixed at the date of death. La.C.C. art. 1505. The fruits that accrue on any property disposed of mor-tis causa, that is later reduced because it exceeds the disposable portion, must be restored by the donee from the date of the testator’s death, if the reduction demand is made within a year of the donor’s death or from the day of demand if made thereafter. La.C.C. art. 1515. There was no error in the trial court’s failure to include the fruits of the estate property earned after the testator’s death in the succession mass before figuring the disposable portion.
Finally, the Gilbert daughters contend that the trial court erred in allowing as a succession debt, a $33,000 reimbursement to Fern Gilbert. In the alternative, the Gilbert daughters argue that if Fern Gilbert is to receive a $33,000 reimbursement from the succession because she paid the Gilbert daughters that Insum from her separate property in settlement of their claims in their mother’s succession, then the amount of the donation from decedent to Fern Gilbert should likewise be upwardly adjusted from $67,000 to $100,000. If the trial court chooses not to upwardly adjust the donation amount, then the court erred in including the $33,000 as a succession debt owed to Fern Gilbert. We agree.
As stated above, the record indicates that decedent had approximately $106,000 in cash and CD’s that were donated to Fern Gilbert by him by his verbal expressions and the execution of a power of attorney in favor of Fern Gilbert, authorizing her to make donations to herself. Fern Gilbert alleged that she spent part of the money on succession expenses and that she paid $33,000 to the Gilbert daughters in settlement of their mother’s succession. The parties then stipulated that the donation to Fern Gilbert was for $67,000. This amount already excluded the $33,000 which Fern Gilbert paid to the Gilbert daughters. For the trial judge to then assess the $33,000 as a debt of the succession, is for him to allow its deduction twice. In other words, if the $33,000 is to be assessed as a succession debt, that is, money owed to Fern Gilbert because she used her separate funds to pay the Gilbert daughters, then the amount of the donation from decedent to her must be amended to $100,000 and that amount must be fictitiously added back into the succession to determine the disposable portion. On the other hand, if, as stipulated by the parties, the donation is set at $67,000, already deducting the amount Fern Gilbert paid to the Gilbert daughters, then the $33,000 should not be assessed as a succession debt.
Since the parties stipulated to the donation as $67,000, already deducting the $33,000 payment, and $67,000 was used as the amount fictitiously added back to the estate to determine the disposable portion, we find that the trial court erred in including the $33,000 as a succession debt.
Fern Gilbert argues that the trial court erred in holding that the life usufruct 112granted her by decedent over his entire estate is an impermissible infringement on the Gilbert daughter’s legitime. She relies on La.C.C. art. 890, which expressly authorizes such a usufruct, in support of her argument. La.C.C. art. 890 provides:
*1219 If the deceased spouse is survived by descendants and shall not have disposed by testament of his share in the community property, the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over all or part of his separate property.
A usufruct authorized by this Article is to be treated as a legal usufruct and is not an impingement upon legitime.
If the usufruct authorized by this Article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner.
A review of the history of this article, beginning in 1844, reveals a gradual and consistent favoring of the surviving spouse in Louisiana succession law to the point that it exists now, permitting the entire legitime to be burden by the usufruct of the surviving spouse. Frederick William Swain and Kathryn Venturatos Lorio, Louisiana Civil Law Treatise, Successions and Donations, § 11.10, (1995). La.C.C. art. 890 expressly provides that a usufruct, created for life over all of the decedent’s property in favor of his or her spouse, notwithstanding that there are forced heirs who are not children of the marriage between the deceased and the surviving spouse, is not an impingement on the legitime. Samuel, Shaw & Spaht, Successions and Donations, 45 La.L.Rev. 575 (1984); Comment, New Hope For The Survivor: The Changes In The \\zUsufmct Of The Surviving Spouse, 28 Loy L.Rev. 1095 (1982).
Notwithstanding the clear and express language of La.C.C. art. 890, the Gilbert daughters argue that the life usufruct in favor of Fern Gilbert, who is not their mother, is invalid. They rely on La.C.C. art. 1752 in support of their argument. La.C.C. art. 1752, addressing a spouse’s right to give the disposable portion of his estate to his or her surviving spouse of a second marriage, provides:
Art. 1752. Disposable portion of widow or widower contracting second marriage
A man or woman who contracts a second or subsequent marriage, having a child or children by a former marriage, can give to his wife, or she to her husband, either by donation inter vivos or by last will and testament, in full property or in usufruct, all of that portion of his estate, or her estate, as the case may be, that he or she could legally give to a stranger.
An understanding of the history of this article aids our analysis of its intent and application in conjunction with La.C.C. art. 890, granting the testator the right to give his spouse a usufruct over the forced portion of his estate, regardless of whether the forced heirs are issue of the marriage. Historically, under Roman Law, donations between spouses were absolute nullities because of concern over the possibility of undue influence. Distrust of spousal donations was evident in our civil code as it originated, providing for lifetime revocability of such donations and restricting the amount that could be given to a spouse. The limitations applied to all spouses, whether a first spouse or a subsequent spouse. The limitations gave way more readily as relates to a first spouse and by 1850 the restrictions on the disposable portion of an estate that could be left to a first or only spouse were removed, allowing one spouse to give to the other “all that he or she might give to a stranger.” Act. No. 300 of 1850, now La.C.C. art. 1746. The amount of the disposable portion that could be left to a subsequent spouse Ijjwas also increased over the years, although at a slower rate than that for first spouses.
The greatest restrictions were in 1825, allowing a spouse to give to a subsequent spouse only a usufruct over property which could not exceed the greater of the least child’s portion or one-fifth of the estate (La. C.C. art. 1745 of 1825). By 1916, however, the restrictions were removed, as in the case of dispositions to a first spouse, and Act No. 116 of 1916 allowed a spouse to give to a *1220 second or subsequent spouse the amount “that he or she could legally give to a stranger” (now La.C.C. art. 1752). Note that after 1916, the first spouse (La.C.C. art. 1746) and the subsequent spouse (La.C.C. art. 1752) are treated the same as pertains to the disposable portion of a spouse’s estate.[4]
Thus, as can be derived from the history of La.C.C. art. 1752, the provision, before to the 1916 amendment did have a substantial restrictive effect. However, after the 1916 amendment, the article as it presently appears, was intended to remove all restrictions on the amount of the disposable portion of one’s property that a spouse can leave to a subsequent spouse. It was not intended to limit what could be given, but, to the contrary, to remove the restrictions in that regard. The article was not simply repealed at that time in order to give a clear and express statement that the former restrictions on spousal donations were removed.
This is further made evident by the repeal of the statute in Act No. 147 of 1990. The repeal was recommended by the Louisiana State Law Institute whose reporter noted that the article “serves no useful purpose and should have been repealed a long time ago.” Minutes of Louisiana State Law Institute Council meeting of December 15-16, 1989 at 4.
| i5The repeal of La.C.C. art. 1752 should have put to rest any arguable conflict between La.C.C. art. 890 and La.C.C. art. 1752, making the intent of the legislature, that La.C.C. art. 890 controls, very clear. However, the argument was resurrected by the Supreme Court decision in Succession of Lauga, supra, because La.C.C. art. 1752 was repealed by Act No. 147 of 1990, which was declared unconstitutional in its entirety in Lauga, rendering the repeal ineffective and thereby reinstating the provision. In doing so, however, Lauga did not erase the relevant statutory history of this permissive provision.
La.C.C. art. 890, on the other hand, is a very narrow article specifically addressing itself to a spouse’s right to grant a usufruct to the surviving spouse over the legitime. The 1982 amendment to this article by Act. No. 445, § 1, changed the law to allow a testator to grant a usufruct to the surviving spouse over separate property, even if the naked ownership of that property is not inherited by issue of the marriage with the survivor. See. Editor’s note, La.C.C. art. 890. La.C.C. art. 1752 does not limit the specific provisions of La.C.C. art. 890.
The Gilbert daughters rely on the case of Succession of Suggs, 612 So.2d 297 (La.App. 5th Cir.1992), joint motion to withdraw writ application granted and request to vacate judgments of lower courts denied, 620 So.2d 860 (La.1993) in support of their argument that the usufruct granted in favor of their stepmother over their forced portion is invalid. In Suggs, a three member panel of this court considered the relationship of La.C.C. art. 1752 and La.C.C. art. 890 under a similar factual situation and concluded that the usu-fruct in favor of the surviving spouse over the forced portion of children not issue of the surviving spouse was invalid. The court in that case, attempted to reconcile La.C.C. art. 1752 with La.C.C. art. 890 and interpreted La.C.C. art. 1752 as controlling, concluding that since a usufruct over the forced portion could not be granted to a stranger it could lignot be granted to the surviving spouse.
The Suggs decision has been roundly criticized by legal commentators since its rendition. Furthermore, other circuits have refused to follow the Suggs rational. The Fourth Circuit, in Succession of Becker, 94-1491 (La.App. 4th Cir. 6/1/95), 660 So.2d 61, writs denied, 95-2411 (La.12/15/95), 664 So.2d 455, was presented with the same issue as that in Suggs, the validity of a testamentary usufruct in favor of the surviving spouse over the legitime of forced heirs who were not issue of the marriage, and held that the usufruct was valid. The court expressly disagreed with the reasoning in Suggs, noting that La.C.C. art. 1752 was not restrictive in allowing only the amount that could be left to a stranger to be left to a surviving spouse but rather was merely permissive in allowing “all of that portion” that could be left to a *1221 stranger to be left to a surviving spouse. The court held, “we do not believe that Civil Code article 890 needs to be interpreted in light of Civil Code article 1752 and, in particular, we do not believe Civil Code article 890 is restricted by Civil Code article 1752.”
Thus, on further review, and with the benefit of hindsight, we conclude that we neglected, in Suggs, to consider the history and legislative intent of the provisions in question in reaching our decision therein. As we noted above, La.C.C. art. 1752 is a general permissive provision that, upon last amendment, was intended to allow a spouse to give that part of his disposable estate to his surviving spouse that he could give to a stranger. It removed any pre-existing restrictions on interspousal donations. La.C.C. art. 890, on the other hand, specifically applies to usufructs over the forced portion of the deceased’s estate and expressly authorizes the granting of a usufruct in favor of the surviving spouse upon the legitime of forced heirs not issue of the marriage. La.C.C. art. 1752 does not limit the express authority granted by La.C.C. art. 890. To the extent that the decision in Succession of Suggs, supra, is contrary to the view | ^expressed herein, it is expressly overruled.[5]
We hold that under La.C.C. art. 890, the legal usufruct granted in favor of a surviving spouse on the forced portion of the testator’s estate inherited by issue of a previous marriage is valid and does not impermissibly impinge on the legitime.
Accordingly, we affirm the trial court judgment insofar as it found valid donations to Fern Gilbert, set attorney’s fees and allowed automobile insurance and license fees as succession expenses, and we reverse the judgment insofar as it did not include the donations to Fern Gilbert in computing the succession mass and the forced portion, and in including the $33,000 payment to Fern Gilbert as a succession debt after reducing the donation to Fern Gilbert to $67,000, and in finding that the usufruct granted in favor of Fern Gilbert impinged on the legitime. We remand the case for recalculation of the succession mass, the forced portion and the necessary reduction of donations to satisfy the legitime, although subject to Fern Gilbert’s usufruct. Costs of appeal are to be equally divided by the parties.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
DUFRESNE, J., dissents.

. In Act 788 of 1989 and Act 147 of 1990 the legislature enacted provisions redefining forced heirs, limiting them to descendants of the first degree under the age of twenty-three or those over the age of twenty-three if they were incapable of taking care of their person or administering their estates due to mental incapacity or physical infirmity. Other changes in the law were also enacted involving collation and the calculation of the forced portion. These changes were challenged in Lauga, supra, on constitutional grounds and as a result, the Supreme Court declared Act 788 of 1989 and Act 147 of 1990 unconstitutional in their entirety.

. The record indicates that the amount of the alleged donation was $106,000. However, Fern Gilbert contends that some of that money was spent on estate expenses and, therefore, the parties have stipulated to a donation of $67,000.

. La.R.S. 9:2354 provides:
No donation inter vivos made by a person to his or her spouse of a previous marriage which was made during the existence of such marriage shall be subject to reduction under the provisions of Articles 1502 through 1518 of the Louisiana Civil Code, nor shall the property transferred by such donation be fictitiously added to the aggregate of all property belonging to the donor in calculating the mass of the donor’s succession under the provisions of Civil Code Article 1505 or in calculating the legitimate portion under Civil Code Article 1234.

. For a thorough discussion of the history of this area of the law see Gerald LeVan and L. Paul Hood, The Louisiana Estate Planner, Vol. 19, Nos. 3 and 4.

. A writ application was timely filed in the Louisiana Supreme Court in the Suggs case and the case was thereafter settled before becoming final.